[Cite as *In re L.E.*, 2015-Ohio-3762.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| L.E., | : | Case No. 15CA3692 |
| | : | |
| | : | |
| Adjudicated Abused and | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| Dependent Child. | : | |
| | : | |
| | : | |
| | : | |

_____

APPEARANCES:

George L. Davis, IV, Portsmouth, Ohio, for appellant.

_____

CIVIL APPEAL FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 9-10-15
ABELE, J.

{¶ 1}  This is an appeal from a Scioto County Common Pleas Court, Juvenile Division, judgment that awarded Scioto County Children Services Board (SCCS) permanent custody of L.E.  Appointed counsel for appellant, H.E. (the child's mother), has advised this court that counsel has reviewed the record and can discern no meritorious issues to appeal.  Pursuant to <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), counsel thus requests to withdraw from the case.  Appellant's counsel has suggested, however, that we independently review the record to determine whether any possible error exists.  Counsel further suggests the following potential assignments of error: (1) whether the trial court erred by granting appellee's permanent custody motion; and (2) whether the trial court plainly erred by permitting a

"quasi-interpreter" to speak on the father's behalf.[1]

{¶ 2}  On November 6, 2012, appellant gave birth to the child at twenty-five weeks gestation.  The child was discovered to have cocaine in his system, and he had several genetic abnormalities, including missing digits and fused fingers.

{¶ 3}  On February 15, 2013, before the child's release from the hospital, appellee sought and obtained temporary emergency custody of the child.  Appellee also filed a complaint alleging the child to be abused/dependent.  On March 30, 2013, the court confirmed its ex parte order and ordered the child to remain in appellee's temporary custody pending adjudication.  On May 30, 2014, the child was discharged from the hospital and placed with a foster family.

{¶ 4}  On January 16, 2014, the court adjudicated the child abused/dependent and ordered the child to remain in appellee's temporary custody until August 15, 2014.  The trial court later extended the temporary custody order for an additional six months.

{¶ 5}  On January 15, 2015, appellee filed a motion that requested permanent custody of the child.  Appellee asserted that the child has been in its temporary custody for more than twelve of the past twenty-two months and that awarding appellee permanent custody would serve the child's best interest.

{¶ 6}  On February 12, 2015, the trial court held a hearing to consider appellee's permanent custody motion.  SCCS caseworker Angie Kemper stated that appellant did not comply with the case plan goal.  Kemper testified that the case plan required appellant to complete a drug treatment program but that (1) during 2013, appellant did not engage in

---

[1]  The child's father has not appealed the trial court's judgment.

any drug treatment programs; (2) in April 2014, appellant attended in-patient treatment, but left without completing the program; (3) appellant attended a community counseling outpatient program for a short period of time; (4) appellant entered Stepping Stones on August 25, 2014, but left the same day; and (5) on January 5, 2015, appellant started another program, but she was discharged from the program.

{¶ 7} Kemper explained that appellant became pregnant while the case was pending and continued to abuse drugs. Kemper testified that appellant tested positive for cocaine and opiates in November and December 2014, and that on January 28, 2015 appellant tested positive for cocaine and opiates.

{¶ 8} Kemper stated that the child has special needs as a result of his premature birth and requires nursing services three days per week. Kemper testified that appellant has not familiarized herself with the child's special needs and how to properly care for them. Kemper explained that in addition to doctor appointments, the child has weekly physical, occupational, and speech therapy appointments.

{¶ 9} Kemper stated that the child has remained in the same foster home since his May 30, 2013 discharge from the hospital and that the foster parents plan to adopt the child, if the court awards appellee permanent custody.

{¶ 10} Appellant testified that she does not want her child to be adopted and would prefer that her sister takes care of the child until appellant successfully completes a drug treatment program. Appellant stated that she does not believe placing the child in appellee's permanent custody is in the child's best interest. Appellant admitted, however, that she used illegal drugs just two days before the permanent custody hearing.

{¶ 11} On March 2, 2015, the trial court granted appellee permanent custody of the

child. The court found that (1) appellant failed to complete recommended training for the special needs child before his discharge from the hospital; (2) appellant failed to begin drug treatment until more than one year after the child was removed from her custody; (3) appellant left the first treatment facility after one month, against her counselor's advice; (4) appellant left the second facility after one day; (5) appellant tested positive for illegal drugs in November and December 2014 while pregnant with another child; (6) on January 28, 2015, appellant admitted that she is still abusing drugs; (7) the child has had an estimated 100 follow-up hospital or doctor visits since his discharge from the hospital, but appellant attended only two of those; (8) the father has seen the child only a few times since birth; (9) the father filed a motion for custody but later informed the court that he does not feel capable of caring for the child and withdrew his request for custody; (10) no suitable relative placement exists; (11) the child has remained in the same foster home continuously since his discharge from the hospital; (12) the child is integrated into the foster family and the foster parents wish to adopt; (13) the child has continuously been in appellee's custody since the emergency removal on February 15, 2013; (14) the child has been in appellee's temporary custody for more than twelve of the past twenty-two months; (15) neither parent has taken steps to make it possible for the child to be returned to either; (16) neither parent has a meaningful relationship with the child; (17) the child needs a legally secure permanent placement that cannot be achieved without granting permanent custody; and (18) the child's best interest would be served by granting appellee permanent custody. The court thus terminated appellant's parental rights and awarded appellee permanent custody of the child. This appeal followed.

I

ANDERS

{¶ 12} In Anders, the United States Supreme Court held that if counsel determines, after a thorough and conscientious examination of the record, that the case is wholly frivolous, counsel should so advise the court and request permission to withdraw. Id. at 744. Furthermore, counsel must accompany the request with a brief that identifies anything in the record that could arguably support the appeal. Id. Counsel must also provide appellant with a copy of the brief and allow the appellant sufficient time to raise any matters that the appellant chooses. Id. Once these requirements have been satisfied, the appellate court must fully examine the trial court proceedings to determine if meritorious issues exist. Id. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements. Id. If, however, the court finds the existence of meritorious issues, it must afford the appellant assistance of counsel before deciding the merits of the case. Id.

{¶ 13} Although Anders arose in a criminal context, we have previously determined that its procedures are appropriate in appeals involving the termination of parental rights. In re N.S., 4th Dist. Hocking 14CA23, 2015-Ohio-1510, ¶19; In re J.K., 4th Dist. Athens 09CA20, 2009-Ohio-5391, ¶¶15-17, citing In re B.F., 5th Dist. Licking No. 2009–CA–007, 2009–Ohio–2978, ¶3; In re K.D., 9th Dist. Wayne No. 06CA27, 2006–Ohio–4730, at ¶¶16–18; Morris v. Lucas Cty. Children Services Bd., 49 Ohio App.3d 86, 86–87, 550 N.E.2d 980 (6th Dist. 1989). But see In re J.M., 1st Dist. Hamilton No. C–130643, 2013–Ohio–5896, ¶19 (holding that "the Anders procedures are not

appropriate in appeals from decisions terminating parental rights or awarding legal custody"); Painter and Pollis, Ohio Appellate Practice, Section 5:27 (2014), citing J.M.

{¶ 14} Accordingly, we will examine appointed counsel's potential assignments of error and the entire record to determine if this appeal has any possible merit.

A

STANDARD OF REVIEW

{¶ 15} A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. E.g., In re B.E., 4th Dist. Highland No. 13CA26, 2014–Ohio–3178, ¶27; In re R.S., 4th Dist. Highland No. 13CA22, 2013–Ohio–5569, ¶29.

> "'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."'"

Eastley v. Volkman, 132 Ohio St.3d 328, 2012–Ohio–2179, 972 N.E.2d 517, ¶12, quoting State v. Thompkins, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1594 (6th ed.1990).

{¶ 16} When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court ""'"weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."'" Eastley at ¶20, quoting Tewarson v. Simon, 141 Ohio App.3d 103,

115, 750 N.E.2d 176 (9th Dist.2001), quoting Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). Accord In re Pittman, 9th Dist. Summit No. 20894, 2002–Ohio–2208, ¶¶23–24.

{¶ 17} The question that we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." In re K.H., 119 Ohio St.3d 538, 2008–Ohio–4825, 895 N.E.2d 809, ¶43. "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."

In re Estate of Haynes, 25 Ohio St.3d 101, 103–04, 495 N.E.2d 23 (1986). In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." State v. Schiebel, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Accord In re Holcomb, 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985), citing Cross v. Ledford, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). Accord In re Adoption of Lay, 25 Ohio St.3d 41, 42–43, 495 N.E.2d 9 (1986). Cf. In re Adoption of Masa, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed

on appeal unless such determination is against the manifest weight of the evidence"). Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. In re R.M., 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013–Ohio–3588, ¶62; In re R.L., 2nd Dist. Greene Nos.2012CA32 and 2012CA33, 2012–Ohio–6049, ¶17, quoting In re A.U., 2nd Dist. Montgomery No. 22287, 2008–Ohio–187, ¶9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.'"). Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, "'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the "'exceptional case in which the evidence weighs heavily against the [decision].'" Thompkins, 78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175; accord State v. Lindsey, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶ 18} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. Eastley at ¶21. As the Eastley court explained:

> "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts. * * *
>
> If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'"

Id., quoting Seasons Coal Co., Inc. v. Cleveland, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." Davis v. Flickinger, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Accord In re Christian, 4th Dist. Athens No. 04CA10, 2004–Ohio–3146, ¶7. As the Ohio Supreme Court long-ago explained:

> "In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation can not be conveyed to a reviewing court by printed record."

Trickey v. Trickey, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952). Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case a trial court judge may have significant contact with the parties before a permanent custody motion is even filed. In such a situation, it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, etc., of the parties than this court ever could from a mere reading of the permanent custody hearing transcript.

B

PERMANENT CUSTODY PRINCIPLES

{¶ 19} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re Murray, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); accord In re D.A., 113 Ohio St.3d 88, 2007–Ohio–1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. D.A. at ¶11. Rather, "'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In re Cunningham, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979), quoting In re R.J.C., 300 So.2d 54, 58 (Fla.App.1974). Thus, the state may terminate parental rights when a child's best interest demands such termination. D.A. at ¶11.

{¶ 20} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

> (A) To provide for the care, protection, and mental and physical development of children * * *;
> * * *
> (B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.

C

## PERMANENT CUSTODY FRAMEWORK

{¶ 21} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by clear and convincing evidence, that the child's best interest would be served by the award of permanent custody and that:

> (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
> (b) The child is abandoned.
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
> (e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.[2]

{¶ 22} Thus, before a trial court may award a children services agency permanent custody, it must find (1) that one of the circumstances described in R.C. 2151.414(B)(1) applies, and (2) that awarding the children services agency permanent custody would further the child's best interests.

{¶ 23} In the case at bar, the trial court determined that R.C. 2151.414(B)(1)(d) applied. Upon our independent review of the record, we do not believe that the court's R.C. 2151.414(B)(1)(d) finding is against the manifest weight of the evidence. The court

---

[2]  R.C. 2151.414(B)(1)(e) became effective on September 17, 2014.

initially removed the child pursuant to a February 15, 2013 ex parte emergency custody order. On January 15, 2014, the court adjudicated the child abused/dependent. R.C. 2151.414(B)(1)(e) specifies that for purposes of R.C. 2151.414(B)(1), a child is considered to have entered a children services agency's temporary custody on the earlier of the date the court adjudicated the child or the date that is sixty days after the child's removal. April 16, 2013, sixty days following the child's removal, is earlier than January 15, 2014, the date the court adjudicated the child abused/dependent. Thus, for purposes of R.C. 2151.414(B)(1)(d), the child entered appellee's temporary custody on April 16, 2013. By the time appellee filed its January 15, 2015 permanent custody motion, the child had been in its temporary custody for well over twelve months. See In re C.W., 104 Ohio St.3d 163, 2004-Ohio-6411, 818 N.E.2d 1176, ¶26 (explaining that before children services agency can seek permanent custody under R.C. 2151.414(B)(1)(d), the child must have been in agency's temporary custody for at least twelve months before the agency files a permanent custody motion). We thus find no error with the court's R.C. 2151.414(B)(1)(d) finding.

{¶ 24} We next consider whether the trial court's best interest finding is against the manifest weight of the evidence.

{¶ 25} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interests will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem,

with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[3]

---

[3] R.C. 2151.414(E)(7) to (11) state:

> (7) The parent has been convicted of or pleaded guilty to one of the following:
> (a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;
> (b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
> (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
> (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
> (e) An offense under section 2905.32, 2907.21, or 2907.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;
> (f) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a), (d), or (e) of this section.
> (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical

**{¶ 26}** In the case at bar, we find ample clear and convincing evidence to support the trial court's best interest finding. With respect to the child's interactions and interrelationships, neither appellant nor the father has an established bond with the child. Appellant did not attend the vast majority of the child's doctor and therapy appointments and thus displayed little to no interest in learning about the child's special needs and how to properly care for them. Instead, she continued to abuse drugs. The child is well-integrated into the foster home.

**{¶ 27}** Regarding the child's wishes, we observe that the guardian <u>ad litem</u> recommended that the trial court award appellee permanent custody.

**{¶ 28}** With respect to the child's custodial history, the evidence shows that the child has never lived in appellant's or his father's home and has never been in either's

---

treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

custody. Instead, since being discharged from the hospital, the child has spent his entire life living in the foster family's home.

{¶ 29} Regarding the child's need for a legally secure permanent placement, appellee investigated possible relative placements but did not find any to be suitable. The court noted that appellant's grandmother and two sisters expressed interest, but appellee determined none of the placements were suitable. Appellant failed to demonstrate that she is willing or able to remain drug-free so as to provide the child with a legally secure permanent placement. The father agreed that he is unable to properly care for the child. Thus, the evidence shows that the child needs a legally secure permanent placement and that this placement cannot be achieved without granting appellee permanent custody. Consequently, the trial court's judgment awarding appellee permanent custody of the child is not against the manifest weight of the evidence.

{¶ 30} Accordingly, based upon the foregoing reasons, we agree with appellant's counsel's assessment that this is not a meritorious issue for review.

II

INTERPRETER

{¶ 31} In the second potential assignment of error, appointed counsel suggests that we review whether the trial court plainly erred by allowing a "quasi-interpreter" to speak on the father's behalf.

{¶ 32} Assuming, arguendo, appellant has standing to appeal error that may have occurred with respect to the father, we are unable to find plain error. Courts should exercise extreme caution when invoking the plain error doctrine, especially in civil cases. Thus, "the doctrine is sharply limited to the extremely rare case involving exceptional

circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson, 79 Ohio St.3d 116, 122-123, 679 N.E.2d 1099 (1997) (emphasis sic); accord Gable v. Gates Mills, 103 Ohio St.3d 449, 2004–Ohio–5719, 816 N.E.2d 1049, ¶43. We do not believe that the case at bar presents an extremely rare case involving exceptional circumstances so as to warrant application of the plain error doctrine.

{¶ 33} First, we note that the court explicitly stated on the record that the parties agreed to proceed with the "quasi-interpreter." At the January 7, 2015 dispositional review hearing, the court noted that a certified interpreted had been scheduled to attend the hearing but was unable to appear. The court asked the parties if they had any objections and all agreed to proceeding without a certified interpreter. The court thus found "a waiver of any defect in the interpretation method."

{¶ 34} Furthermore, the father's counsel stated that she met with the father and the "quasi-interpreter" and reported that it was "the best session that [she has] had with [her client]." The father's counsel continued: "I truly believe that today is the first time my client really understands." Later in the hearing, the interpreter indicated that the father fully understood the proceedings and the implications of permanent custody.

{¶ 35} Because appellant's and the father's counsel agreed to proceed with the "quasi-interpreter," we believe that appellant invited any error that may have resulted. "Under the invited-error doctrine, a party is not entitled to take advantage of an error that he himself invited or induced the trial court to make." State v. Neyland, 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶243; see State v. Davis, 116 Ohio St.3d 404,

2008-Ohio-2, 880 N.E.2d 31, ¶86 (determining that agreeing to admit evidence without objection constitutes invited error); Faulks v. Flynn, 4th Dist. Scioto No. 13CA3568, 2014–Ohio–1610, ¶22 (stating that "even plain error is waived where error is invited"). Consequently, even if the court somehow erred by using the quasi-interpreter, appellant and all other parties agreed to proceed with the quasi-interpreter. No one objected. Under these circumstances, appellant invited any error that may have resulted.

{¶ 36} Even if appellant did not invite the error, we do not see how the use of the quasi-interpreter prejudiced appellant's rights. Nothing indicates that the interpreter somehow misrepresented the father's wishes or that the court would not have granted appellee permanent custody if a different interpreter had been employed. The court's judgment entry granting appellee permanent custody notes that the father informed the court "both personally and through his attorney" that he does not feel capable of caring for the child. The court further noted that the father did not participate in any reunification attempts with the child. We thus do not find any error–plain or otherwise–resulting from the use of the "quasi-interpreter." We have independently reviewed the record and agree with appellant's counsel that the second potential assignment of error lacks merit.

{¶ 37} Accordingly, based upon the foregoing reasons, we do not believe that any meritorious issues to appeal exist. Therefore, we grant counsel's request to withdraw, find this appeal wholly frivolous, and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. & McFarland, A.J.: Concur in Judgment & Opinion

For the Court

BY:_____
 Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.