[Cite as *In re D.M.*, 2016-Ohio-1450.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

IN THE MATTER OF:         :         CASE NO. 15CA22

                                    :

D.M.                          :         DECISION AND JUDGMENT

                                    :         ENTRY

                                    :

                                    :         **Released: 03/30/16**

_____

APPEARANCES:

Jorden M. Meadows, Logan, Ohio, for Appellant K.C.[1]

Laina Fetherolf, Hocking County Prosecutor, and Ann A. McDonough, Assistant Hocking County Prosecutor, Logan, Ohio, for Appellee Hocking County Children Services.[2]

_____

McFarland, J.

{¶1} This is an appeal from a Hocking County Common Pleas Court, Juvenile Division, judgment that awarded South Central Ohio Job and Family Services (SCOJFS) permanent custody of D.M. Counsel for Appellant, K.C. (the child's mother), has advised this Court that counsel has reviewed the record and can discern no meritorious issues to appeal. Pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, (1967), counsel thus requests to withdraw from the case. Appellant's counsel has suggested, however, that we independently review the record to determine

---

[1] K.C. is the mother of D.M. D.M's father, A.M., II, has not filed a brief and is not participating on appeal.
[2] Appellee, Hocking County Children Services, has not filed a brief and is not participating on appeal.

whether any possible error exists.  Counsel further suggests one potential

assignment of error, whether Appellant was denied the effective assistance

of counsel during the pendency of her case.

FACTS

{¶2}  Appellant, K.C., is the mother of D.M., minor child at issue

herein, born on September 24, 2010.  D.M.'s father is A.M., II.  A complaint

for dependency was filed by Appellee, SCOJFS, on September 13, 2013.

The complaint alleged that on August 26, 2013, A.M., II wrecked his vehicle

into Scott's Creek with his minor child and failed to report the accident.  It

was later determined that the vehicle was actually submerged into the creek

with D.M. in his carseat.  Apparently A.M., II had to dive under water and

remove D.M.  No medical assistance was subsequently sought for the child.

A.M., II was arrested and admitted he had been drinking and smoking

marijuana the day of the accident.  Appellant, K.C., was in treatment at the

Transitional Recovery Program in Chillicothe, Ohio at the time of accident.

D.M. was initially placed into the care and custody of his great grandmother,

however, she informed SCOJFS she could not keep D.M. in her home due to

his behaviors.  The trial court found D.M. dependent on October 24, 2013,

which finding was journalized on October 29, 2013.  D.M. was then placed

in the temporary custody of SCOJFS on November 18, 2013, and a case plan was adopted on March 3, 2014.

{¶3} Appellant was released from treatment sometime in early 2014, but left the area and went to Columbus to live. During this time until approximately April or May of 2015, she had no contact with D.M. A motion for permanent custody was filed by Appellee on February 5, 2015. Appellant resumed visits with D.M. beginning on approximately April 13, 2015. Appellant had weekly supervised visits with D.M. until the permanent custody hearing on August 21, 2015. A GAL report filed with the trial court just prior to the permanent custody hearing recommended that permanent custody be granted to Appellee.

{¶4} Appellee presented three witnesses in support of the motion for permanent custody: Rebecca Carter, SCOJFS case worker; Doree Ireton, GAL for the D.M.; and K.C. K.C. also testified on her own behalf at the hearing. A.M., II had counsel present at the hearing, but requested that he not be conveyed to court for the hearing, despite the fact that arrangements had been made for him to be conveyed. Appellee presented evidence that A.M., II had continued in his substance abuse, had been cited repeatedly for OMVI, had failed to obtain treatment, had failed to work his case plan and

had had no contact with D.M. since the original incident, with the exception of two unapproved and unsupervised visits facilitated by K.C.

{¶5} Appellee presented evidence that K.C. had re-engaged in services and treatment after the motion for permanent custody was filed, had resumed visits with D.M. and had consistently visited with D.M. after the permanent custody motion was filed, and had been working her case plan. Appellee also presented evidence, however, that Appellant went for a period of approximately eleven months without contacting or visiting D.M., and that K.C. had remained in contact with A.M., II despite treatment recommendations and probation terms that she not, and that she was currently pregnant with A.M., II's child. There was also testimony that K.C. was low functioning, and at times demonstrated poor choices and decision making with respect to D.M. The guardian ad litem also filed a report and testified at the hearing, recommending that permanent custody be granted to Appellee.

{¶6} The trial court ultimately granted Appellee's motion for permanent custody by decision dated September 17, 2015. It is from this order that Appellant brings her timely appeal.

*ANDERS*

{¶7} In *Anders*, the United States Supreme Court held that if counsel determines, after a thorough and conscientious examination of the record, that the case is wholly frivolous, counsel should so advise the court and request permission to withdraw. Id. at 744. Furthermore, counsel must accompany the request with a brief that identifies anything in the record that could arguably support the appeal. Id. Counsel must also provide appellant with a copy of the brief and allow the appellant sufficient time to raise any matters that the appellant chooses. Id. Once these requirements have been satisfied, the appellate court must fully examine the trial court proceedings to determine if meritorious issues exist. Id. If the appellate court determines that the appeal is frivolous, it may grant counsel's request to withdraw and dismiss the appeal without violating constitutional requirements. Id. If, however, the court finds the existence of meritorious issues, it must afford the appellant assistance of counsel before deciding the merits of the case. Id.

{¶8} Although *Anders* arose in a criminal context, we have previously determined that its procedures are appropriate in appeals involving the termination of parental rights. *In re L.E.*, 4th Dist. Scioto No. 15CA3692, 2015-Ohio-3762; *In re N.S.*, 4th Dist. Hocking No. 14CA23, 2015-Ohio-1510, ¶ 19; *In re J.K.*, 4th Dist. Athens No. 09CA20, 2009-Ohio-

5391, ¶¶ 15-17; citing *In re B.F.*, 5th Dist. Licking No. 2009-CA-007, 2009-Ohio-2978, ¶ 3; *In re K.D.*, 9th Dist. Wayne No. 06CA0027, 2006-Ohio-4730, ¶¶ 16-18; *Morris v. Lucas Cty. Children Services Bd.*, 49 Ohio App.3d 86, 86-87, 550 N.E.2d 980 (6th Dist. 1989). But see *In re J.M.*, 1st Dist. Hamilton No. C-130643, 2013-Ohio-5896, ¶ 19 (holding that "the *Anders* procedures are not appropriate in appeals from decisions terminating parental rights or awarding legal custody"); Painter and Pollis, Ohio Appellate Practice, Section 5:27 (2014), citing *J.M.*

{¶9} Accordingly, we will examine appointed counsel's potential assignment of error and the entire record to determine if this appeal has any possible merit.

STANDARD OF REVIEW

{¶10} Before we consider Appellant's potential assignment of error, we first review the record to determine whether any possible error exists with respect to the trial court's grant of permanent custody to SCOJFS. A reviewing court generally will not disturb a trial court's permanent custody decision unless the decision is against the manifest weight of the evidence. *In re B.E.*, 4th Dist. Highland No. 13CA26, 2014-Ohio-3178, ¶ 27; *In re R.S.*, 4th Dist. Highland No. 13CA22, 2013-Ohio-5569, ¶ 29.

" 'Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them.  Weight is not a question of mathematics, but depends on its effect in inducing belief." ' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12; quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); quoting Black's Law Dictionary 1594 (6th Ed. 1990).

{¶11}  When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court " ' "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." ' " *Eastley* at ¶ 20; quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist. 2001); quoting *Thompkins* at

387; quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983). Accord *In re Pittman*, 9th Dist. Summit No. 20894, 2002-Ohio-2208, ¶¶ 23-24.

{¶12} The question that we must resolve when reviewing a permanent custody decision under the manifest weight of the evidence standard is "whether the juvenile court's findings * * * were supported by clear and convincing evidence." *In re K.H.*, 119 Ohio St.3d 538, 2008-Ohio-4825, 895 N.E.2d 809, ¶ 43. "Clear and convincing evidence" is:

> "The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re Estate of Haynes*, 25 Ohio St.3d 101, 103-04, 495 N.E.2d 23 (1986).

In determining whether a trial court based its decision upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). Accord *In re Holcomb*, 18 Ohio St.3d 361, 368, 481

N.E.2d 613 (1985); citing *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954) ("Once the clear and convincing standard has been met to the satisfaction of the [trial] court, the reviewing court must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof."). Accord *In re Adoption of Lay*, 25 Ohio St.3d 41, 42-43, 495 N.E.2d 9 (1986). Cf. *In re Adoption of Masa*, 23 Ohio St.3d 163, 165, 492 N.E.2d 140 (1986) (stating that whether a fact has been "proven by clear and convincing evidence in a particular case is a determination for the [trial] court and will not be disturbed on appeal unless such determination is against the manifest weight of the evidence"). Thus, if the children services agency presented competent and credible evidence upon which the trier of fact reasonably could have formed a firm belief that permanent custody is warranted, then the court's decision is not against the manifest weight of the evidence. *In re R.M.*, 4th Dist. Athens Nos. 12CA43 and 12CA44, 2013-Ohio-3588, ¶ 62; *In re R.L.*, 2nd Dist. Greene Nos. 2012CA32 and 2012CA33, 2012-Ohio-6049, ¶ 17; quoting *In re A .U.*, 2nd Dist. Montgomery No. 22287, 2008-Ohio-187, ¶ 9 ("A reviewing court will not overturn a court's grant of permanent custody to the state as being contrary to the manifest weight of the evidence 'if the record contains competent,

credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements * * * have been established.' "). Once the reviewing court finishes its examination, the court may reverse the judgment only if it appears that the fact-finder, when resolving the conflicts in evidence, " 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Thompkins* at 387; quoting *State v. Martin*, at 175. A reviewing court should find a trial court's permanent custody decision against the manifest weight of the evidence only in the " 'exceptional case in which the evidence weighs heavily against the [decision].' " Id.; accord *State v. Lindsey*, 87 Ohio St.3d 479, 483, 721 N.E.2d 995 (2000).

{¶13} Furthermore, when reviewing evidence under the manifest weight of the evidence standard, an appellate court generally must defer to the fact-finder's credibility determinations. *Eastley* at ¶ 21. As the *Eastley* court explained:

> " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment must be made in favor of the judgment and the finding of facts.
>
> * * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " Id.; quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978).

Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997). Accord *In re Christian*, 4th Dist. Athens No. 04CA10, 2004-Ohio-3146, ¶ 7. As the Ohio Supreme Court long-ago explained:

"In proceedings involving the custody and welfare of children the power of the trial court to exercise discretion is peculiarly important. The knowledge obtained through contact with and observation of the parties and through independent investigation cannot be conveyed to a reviewing court by printed record." *Trickey v. Trickey*, 158 Ohio St. 9, 13, 106 N.E.2d 772 (1952).

{¶14} Furthermore, unlike an ordinary civil proceeding in which a jury has no contact with the parties before a trial, in a permanent custody case a trial court judge may have significant contact with the parties before a permanent custody motion is even filed. In such a situation, it is not unreasonable to presume that the trial court judge had far more opportunities to evaluate the credibility, demeanor, attitude, etc., of the parties than this Court ever could from a mere reading of the permanent custody hearing transcript.

## PERMANENT CUSTODY PRINCIPLES

{¶15} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388 (1982); *In re Murray*, 52 Ohio St.3d 155, 156, 556 N.E.2d 1169 (1990); accord *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829. A parent's rights, however, are not absolute. *D.A.* at ¶ 11. Rather, " 'it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.' " *In re Cunningham*, 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979); quoting *In re R.J.C.*, 300 So.2d 54, 58

(Fla.App.1974). Thus, the state may terminate parental rights when a child's best interest demands such termination. *D.A.* at ¶ 11.

{¶16} Before a court may award a children services agency permanent custody of a child, R.C. 2151.414(A)(1) requires the court to hold a hearing. The primary purpose of the hearing is to allow the court to determine whether the child's best interests would be served by permanently terminating the parental relationship and by awarding permanent custody to the agency. R.C. 2151.414(A)(1). Additionally, when considering whether to grant a children services agency permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:

"(A) To provide for the care, protection, and mental and physical development of children * * *;

* * *

(B) To achieve the foregoing purpose[ ], whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety."

PERMANENT CUSTODY FRAMEWORK

{¶17} R.C. 2151.414(B)(1) permits a trial court to grant permanent custody of a child to a children services agency if the court determines, by

clear and convincing evidence, that the child's best interest would be served

by the award of permanent custody and that:

"(a) The child is not abandoned or orphaned or has not been in

the temporary custody of one or more public children services

agencies or private child placing agencies for twelve or more

months of a consecutive twenty-two month period ending on or

after March 18, 1999, and the child cannot be placed with either

of the child's parents within a reasonable time or should not be

placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child

who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more

public children services agencies or private child placing

agencies for twelve or more months of a consecutive twenty-

two month period ending on or after March 18, 1999.

(e) The child or another child in the custody of the parent or

parents from whose custody the child has been removed has

been adjudicated an abused, neglected, or dependent child on

three separate occasions by any court in this state or another

state.[3]"

Thus, before a trial court may award a children services agency permanent

custody, it must find (1) that one of the circumstances described in R.C.

2151.414(B)(1) applies, and (2) that awarding the children services agency

permanent custody would further the child's best interests.  Here, the trial

court found that D.M. had been abandoned by both his mother and his

father, which would constitute a finding under R.C. 2151.414(B)(1)(b).

Because D.M.'s father, A.M., II, has not filed a brief and is not participating

on appeal, we limit our review to the trial court's finding of abandonment

with respect to K.C. only.

{¶18}  The trial court found that D.M. had been abandoned by K.C. in

that K.C. failed to visit or contact D.M. for more than ninety days.  The trial

court, in its decision, stated that K.C. failed to visit or contact D.M. from

January of 2014 until May of 2015.  SCOJFS case worker, Rebecca Carter,

testified that Appellant failed to visit or contact D.M. from May of 2014

until April 13, 2015, when visits resumed.  The GAL report filed with the

court stated that Appellant did not visit or contact D.M. from July 16, 2014

until April of 2015, a period of approximately nine months.  Appellant

---

[3] R.C. 2151.414(B)(1)(e) became effective on September 17, 2014.

testified at the hearing also.  When questioned why she had no contact with D.M. from the fall of 2014 until roughly April of 2015 while she was living in Columbus, Appellant answered "I don't know."  Thus, though the specific dates referenced by the witnesses and the GAL report are in conflict, by all accounts Appellant went for more than ninety days without visiting or contacting D.M.  " 'For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days.' " *In the Matter of Ethen Perry*, 4th Dist. Vinton Nos. 06CA648 and 06CA649, 2006-Ohio-6128, ¶ 44.  As such, the trial court's finding that Appellant abandoned D.M. is supported by competent, credible evidence in the record.

{¶19}   Before going on to the best interest analysis, the trial court went on to make reasonable efforts findings.  Although the trial court made a reasonable efforts finding as to both parents, we conclude that because there was a finding of abandonment, it was not required to make reasonable efforts determinations.  First, "[b]y its terms, R.C. 2151.419 applies only at * * * adjudicatory, emergency, detention, and temporary-disposition hearings, and dispositional hearings for abused, neglected, or dependent

children, all of which occur prior to a decision transferring permanent custody to the state.  The statute makes no reference to a hearing on a motion for permanent custody.  Therefore, '[b]y its plain terms, the statute does not apply to motions for permanent custody brought pursuant to R.C. 2151.413, or to hearings held on such motions pursuant to R.C. 2151.414.' " *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 41; quoting *In re A.C.*, 12th Dist. Clermont No. CA2004-05-041, 2004-Ohio-5531, ¶ 30.  Here, the record reflects that the trial court made a reasonable efforts finding by entry dated September 30, 2014, prior to the filing of the motion for permanent custody and thus did not need to address reasonable efforts at the permanent custody hearing.

{¶20}  Further, because the trial court found that D.M. had been abandoned, it was not required to find that the agency had to make reasonable efforts.  In *Perry*, supra, at ¶ 45, this Court found that when an abandonment finding is made, a trial court is obligated, under R.C. 2151.419(A)(2)(d), "to find that the agency did not have to make reasonable efforts * * *."  Here, the trial court made reasonable efforts findings despite the fact that it was not required to do so, and despite the fact that under *Perry*, it was obligated to find that such findings were not required.

Although the trial court technically erred in this regard, we find such error to be harmless.

{¶21} Having determined that the trial court properly found D.M. had been abandoned by both parents, and in particular his mother, Appellant herein, we now turn our attention to the trial court's best interest analysis. Specifically, we must determine whether the trial court's best interest finding is against the manifest weight of the evidence.

{¶22} R.C. 2151.414(D) requires a trial court to consider specific factors to determine whether a child's best interest will be served by granting a children services agency permanent custody. The factors include: (1) the child's interaction and interrelationship with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the child's wishes, as expressed directly by the child or through the child's guardian ad litem, with due regard for the child's maturity; (3) the child's custodial history; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.[4]

---

[4] R.C. 2151.414(E)(7) to (11) states:
"(7) The parent has been convicted of or pleaded guilty to one of the following:
(a) An offense under section 2903.01, 2903.02, or 2903.03 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense

**{¶23}** In the case at bar, a review of the trial court's decision

indicates that appropriate best interest findings were made by the trial court

and that such findings are supported by competent, credible evidence in the

record.  With respect to the child's interactions and interrelationships, the

trial court found D.M. had been abandoned by both parents.  The trial court

also found that D.M. acted the same way with his mother as he did with

anyone else who visited him, and that he had a relationship with his half-

---

described in those sections and the victim of the offense was a sibling of the child or the victim was another child who lived in the parent's household at the time of the offense;

(b) An offense under section 2903.11, 2903.12, or 2903.13 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;

(d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(e) An offense under section 2905.32, 2907.21, or 2907.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(f) A conspiracy or attempt to commit, or complicity in committing, an offense described in division (E)(7)(a), (d), or (e) of this section.

(8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.

(9) The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child."

brother, A.M., who was currently placed in the same foster-to-adopt home as he was.

{¶24} With respect to the child's wishes, the trial court found that D.M. was only four years old, was confused and that his wishes were unclear. The trial court noted that the child had expressed conflicting desires to live with Appellant and also to live with his foster parents. Regarding the child's custodial history, the trial court found that D.M. had been in some form of custody of SCOJFS since September of 2013, where he had remained since that time. Elsewhere in its decision, the trial court found that D.M. was in his fifth home in his four years of life, and that he was currently placed in a foster-to-adopt home. Regarding the child's need for a legally secure placement, the trial court found that D.M. was in need of a legally secure placement, which the court was concerned Appellant could not provide in light of her continued involvement with D.M.'s father, especially considering Appellant was then again pregnant with A.M., II's child. Elsewhere in its decision the trial court found that a legally secure permanent placement could not be achieved without granting permanent custody to SCOJFS. We note that the GAL report filed just prior to the permanent custody hearing also recommended that permanent custody be granted to the agency.

{¶25} The trial court further found the following R.C. 2151.414(E) factors applied: (9) finding that Appellant had left drug treatment for over a year and then returned, only to continue to maintain a relationship with A.M., II, thus failing to comply with her drug treatment recommendations and probation terms. Although not found by the court at this juncture, the record also indicates that Appellant took D.M. to see A.M. twice without approval to do so after the case plan was issued; and (10) finding that Appellant had abandoned D.M. under R.C. 2151.011(C), which provides that abandonment occurs when a parent fails to visit or maintain contact with the child for more than 90 days. As set forth above, although there are some discrepancies between the dates of abandonment found by the trial court, as compared to the GAL report and the testimony of Rebecca Carter, by all accounts Appellant's failure to visit or contact D.M. far exceeded 90 days.

{¶26} Thus, it appears from our review of the trial court's decision that the necessary best interest factors were taken into consideration by the trial court and appear to weigh in favor of a grant of permanent custody to SCOJFS. Further, the best interest findings set forth by the trial court in its decision are supported by competent, credible evidence in the record, and thus are not against the manifest weight of the evidence. In light of the

foregoing we find no error with respect to the trial court's decision to award permanent custody to SCOJFS.

{¶27} We next consider Appellant's potential assignment of error, whether Appellant was denied the effective assistance of counsel during the pendency of her case. Appellant's counsel suggests no particular deficiency or error with respect to Appellant's trial counsel's representation of Appellant below. The right to counsel, guaranteed in permanent custody proceedings by R.C. 2151.352 and by Juv.R. 4, includes the right to the effective assistance of counsel. *In re Wingo*, 143 Ohio App.3d 652, 666, 758 N.E.2d 780 (4th Dist. 2001), citing *In re Heston*, 129 Ohio App.3d 825, 827, 719 N.E.2d 93 (1st Dist. 1998). " 'Where the proceeding contemplates the loss of parents' 'essential' and 'basic' civil rights to raise their children, * * * the test for ineffective assistance of counsel used in criminal cases is equally applicable to actions seeking to force the permanent, involuntary termination of parental custody.' " Id., quoting *Heston*.

{¶28} To reverse a trial court's judgment based upon a claim of ineffective assistance, a defendant must show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, (1984); *State*

*v. Noling*, 98 Ohio St.3d 44, 65, 781 N.E.2d 88 (2002); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Both prongs of this test need not be analyzed, however, if a claim can be resolved under one prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *State v. Loza*, 71 Ohio St.3d 61, 83, 641 N.E.2d 1082 (1994).

{¶29} Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687; *Bradley*, paragraph two of the syllabus (stating that counsel's performance is deficient if it falls below an objective standard of reasonable representation); *State v. Peeples*, 94 Ohio App.3d 34, 44, 640 N.E.2d 208 (1994) (stating that counsel's performance is deficient if it "raise[s] compelling questions concerning the integrity of the adversarial process"). To establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, paragraph two of the syllabus; *Strickland*, 466 U.S. at 687; *Noling*; *Bradley*, paragraph three of the syllabus ("To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.").

When an appellate court considers an ineffective assistance of counsel claim, the court " 'will not presume prejudice but will require an affirmative showing thereof.' " *In re Z.S.*, 4th Dist. Lawrence No. 10CA16, 2010-Ohio-5038, ¶ 35; quoting *Matter of Shelton*, 4th Dist. Highland No. 818, 1993 WL 79282 (Mar. 16, 1993).

{¶30} Based upon our review of the record, and in light of our determination that the trial court's decision to grant permanent custody of D.M. to SCOJFS was supported by competent, credible evidence in the record, we find no obvious error by Appellant's trial counsel. The only arguable concern that we notice, which we address in an abundance of caution, is the trial court's failure to appoint independent counsel for the child. The record reflects that while the child had a guardian ad litem appointed, he did not have appointed counsel. However, based upon the case law and our analysis below, we find no error in the trial court's decision not to appoint counsel for D.M., and thus cannot conclude that Appellant's trial counsel provided ineffective assistance by failing to raise the issue at the trial court level.

{¶31} "[A] child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." *In re Williams*,

101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1100, syllabus, citing R.C. 2151.352, Juv.R. 4(A), and Juv.R. 2(Y); accord *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899, 951 N.E.2d 398.  Thus, a child is not entitled to independent counsel in all juvenile court proceedings involving the termination of parental rights.  Instead, a child is entitled to independent counsel in a termination of parental rights proceeding only when "certain circumstances" exist.  The *Williams* court did not explicitly state what those "circumstances" are, but it offered the following guidance for juvenile courts to follow when ascertaining if "certain circumstances" exist: "[C]ourts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the guardian ad litem being appointed to represent the child." Id. at ¶ 17.  Furthermore, a juvenile court must appoint independent counsel for a child "when a guardian ad litem who is also appointed as the juvenile's attorney recommends a disposition that conflicts with the juvenile's wishes." Id. at ¶ 18; accord *C.B.* at ¶ 17.

{¶32}  "Generally, the appointment of independent counsel is warranted when a child has 'repeatedly expressed a desire' to remain or be reunited with a parent but the child's guardian ad litem believes it is in the child's best interest that permanent custody of the child be granted to the

state." *In re Hilyard*, 4th Dist. Vinton Nos. 05CA600 through 05CA609, 2006-Ohio-1965, ¶ 36 (footnotes omitted) (emphasis sic).  When a child lacks the maturity to express his or her wishes and nothing otherwise indicates that the child's wishes conflict with the guardian ad litem, then a juvenile court need not appoint counsel for the child. *In re L.W.*, 9th Dist. Summit Nos. 26861 and 26871, 2013-Ohio-5556, ¶ 20 (child two years old when children services agency initiated proceedings and unable to communicate wishes).

{¶33} In the case at bar, nothing in the record indicates that the child ever expressed any desire that conflicted with the guardian ad litem's recommendation.  The child was only four years old at the time of the permanent custody hearing, and the trial court correctly found that the child was confused and that his wishes were unclear.  Moreover, as another court recognized, when a child is "unable to express a position regarding custody or to assist an attorney in pursuing a particular course of action," an attorney would be able to advocate only what the attorney believed to be in the child's best interests. *In re T.J.*, 2nd Dist. Montgomery No. 23032, 2009-Ohio-1290, ¶ 10.  However, a guardian ad litem also recommends what he or she believes is in the child's best interests.  Thus, an attorney appointed for a child unable to express his or her wishes would fulfill the same duty that the

guardian ad litem already fulfills.  As a result, in this situation, any error in failing to appoint counsel for the child would be harmless. Id., citing *In re A.S.*, 10th Dist. Franklin No. 05AP-351, 05AP-352, 2005-Ohio-5492, ¶ 10. Here, the trial court noted in its permanent custody decision that, based upon its prior in camera interview of D.M., the child was "too immature and unable to understand the issues at hand and therefore unable to assist counsel in representing him and expressing his opinions."  As such, the trial court determined to proceed with the permanent custody motion without appointing counsel for D.M.

{¶34}  Thus, we conclude the trial court's decision not to appoint D.M. independent counsel was reasonable and did not constitute error.  As such, we agree with Appellant's counsel's assessment that this is not a meritorious issue for review.  Accordingly, and based upon the foregoing, we do not believe that any meritorious issues to appeal exist.  Therefore, we grant counsel's request to withdraw, find this appeal wholly frivolous, and affirm the trial court's judgment.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J.:    Concurs in Judgment and Opinion.
Harsha, J.:   Concurs in Judgment Only.


For the Court,


BY:    _____
       Matthew W. McFarland, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**