[Cite as *In re M.K.*, 2019-Ohio-587.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| M.K., A.C., AND H.C., DEPENDENT CHILDREN | : | |
| | : | **CASE NOS. 2018-A-0073** |
| | | **2018-A-0074** |
| | | **2018-A-0075** |

Appeals from the Ashtabula County Court of Common Pleas, Juvenile Division, Case Nos. 2017 JC 00009, 2017 JC 00010, and 2017 JC 00011.

Judgment: Affirmed.

*Margaret A. Draper*, Assistant Prosecutor, ACCSB, 3914 C Court, Ashtabula, OH 44004, and *Nicholas A. Iarocci*, Ashtabula County Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee, Ashtabula County Children Services Board).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Appellant, Adrian Cosme).

*Jodi M. Blankenship*, P.O. Box 970, Painesville, OH 44077 (Guardian ad Litem).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Adrian Cosme, appeals the trial court's decision granting permanent custody of his children, M.K., A.C and H.C., to the Ashtabula County Children Services Board (the Agency). We affirm.

{¶2} Appellant's children have the same mother, and her parental rights were likewise terminated pursuant to the trial court's decision, but this appeal only addresses the termination of appellant's parental rights. At the time of the permanent custody hearing, M.K. and A.C. were nine years old and the youngest child, H.C., was only two.

{¶3} Appellant raises one assignment of error: "The trial court erred when it determined parental custody [to the Agency] was in the best interest of the minor children."

{¶4} Parents have a constitutionally protected and fundamental right in the care, custody, and management of their children. *In re H.D.,* 10th Dist. Franklin No. 13AP-707, 2014-Ohio-228, ¶10; *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). However, these rights are not unconditional and are subordinate to the best interest of the child when considering a motion to terminate parental rights. *In re Cunningham,* 59 Ohio St.2d 100, 106, 391 N.E.2d 1034 (1979). Thus, in certain circumstances, the state may terminate one's parental rights when doing so is in the best interest of the child. *Id.* at 105, 391 N.E.2d 1034.

{¶5} Before a juvenile court can terminate parental rights and award permanent custody to the requesting agency, it must conduct a hearing and apply a two-pronged analysis. First, a court must find by clear and convincing evidence that one or more of the factors spelled out in R.C. 2151.414(B)(1)(a)-(e) applies. These factors include whether the child has been in the Agency's custody for 12 or more months of a consecutive 22-month period. R.C. 2151.414(B)(1)(a).

{¶6} Here, the trial court found that M.K., A.C., and H.C. had been in the Agency's temporary custody for more than 12 months before it moved for permanent

2

custody. Appellant does not challenge this aspect of the court's decision, and as such, we do not address it.

{¶7} Second, upon finding one or more of these factors applicable, the trial court then must determine whether granting custody of the child to the Agency is in the child's best interest pursuant to the analysis delineated in R.C. 2151.414(D).

{¶8} After a hearing, the court must find by clear and convincing evidence that granting permanent custody of the child to the agency is in the best interest of the child upon considering all relevant factors including those in R.C. 2151.414(D). Clear and convincing evidence is evidence sufficient to "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Holcomb,* 18 Ohio St.3d 361, 368, 481 N.E.2d 613 (1985).

{¶9} The trial court made the following findings in support of its decision that a grant of custody to the Agency is in the best interest of the children:

{¶10} "Father's relationship with the two oldest children was marked with violence. He has not had any contact with these children since 2016 as a result of his child endangering conviction. No evidence was presented regarding a bond that exists between Father and these children, but the court [finds] * * * that a bond may remain between these children and their father. The children know who father is, but no other evidence was presented regarding that relationship. Father has visited with H.C. and such visits have been appropriate. * * * [A] bond has been established with regard to the youngest child. * * * [H]owever, father has not had all three children in his care in a supervised setting during this case much less in an unsupervised setting where he would be placed in a position of parenting these children.

3

{¶11} "* * *

{¶12} "The children are described as 'coming along' [in foster care] because there is some acting out. The boys have been prescribed ADHD medications. [A.C.] is aggressive in his behaviors. [M.K.] receives therapy * * * for his aggression and sexualized behaviors. [They] are 'rougher' in their manner of play, knocking other people down.

{¶13} "The current home provides more structure than the prior home and there are efforts to teach the children not to destroy items. With these efforts, there continues to be progress.

{¶14} "* * *

{¶15} "No family member filed a motion for legal custody.

{¶16} "* * * [T]he evidence is clear and convincing that a legally secure permanent placement of the children cannot be achieved without a grant of permanent custody to ACCSB. As reflected in the guardian ad litem's report and evidence presented, the children need a legally secure placement * * * .

{¶17} "* * * [T]he court finds that father was convicted of child endangering, in violation of Ohio Revised Code 2919.22, and the child and a sibling of the child was a victim of the offense."

{¶18} The trial court also noted that no one requested an in camera interview of the children and none was conducted, and according to the guardian ad litem, the two older children were unable to express an opinion stating their preference between reunification and adoption while the youngest child was too young to express her wishes.

4

{¶19} We review the trial court's termination of an individual's parental rights pursuant to the manifest weight of the evidence standard. *In re J.H.,* 11th Dist. Lake No. 2012-L-126, 2013-Ohio-1293, ¶91; *In re B.R.C.,* 11th Dist. Portage Nos. 2013-P-0059 and 2013-P-0060, 2014-Ohio-69, ¶41. "When an appellate court reviews whether a trial court's permanent custody decision is against the manifest weight of the evidence, the court ""'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.""' *Eastley [v. Volkman,* 132 Ohio St.3d 328] at ¶20, quoting *Tewarson v. Simon,* 141 Ohio App.3d 103, 115, 750 N.E.2d 176 (9th Dist.2001)." *In re D.M.,* 4th Dist. Hocking No. 15CA22, 2016-Ohio-1450, ¶11.

{¶20} "Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact." *In re West,* 4th Dist. Athens No. 05CA4, 2005-Ohio-2977, ¶37.

{¶21} Upon determining the best interest of a child, the court shall consider all relevant factors including,

{¶22} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶23} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶24} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child

5

placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

{¶25} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶26} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child." R.C. 2151.414(D)(1).

{¶27} The factors in R.C. 2151.414(E)(7) to (11) include:

{¶28} "(7) The parent has been convicted of or pleaded guilty to one of the following:

{¶29} "* * *

{¶30} "(c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense[.]"

{¶31} This is the second children's services case regarding appellant's family. The first case arose following reports that appellant physically abused his two oldest children, M.K. and A.C., and that both had sustained fractures as a result. The first case

6

ended with the children being returned to their mother's custody who had ended her relationship with appellant. As found by the trial court, the prior Agency case resulted in criminal charges against appellant.

{¶32} On June 24, 2016, appellant was convicted of two offenses: child endangering, a third-degree felony in violation of R.C. 2919.22, and domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25. He was sentenced to two years community control and intensive supervision that included six months in the county jail with work release privileges. As a condition of his community control, appellant was ordered to have no contact directly or indirectly with the victims. The victims of appellant's offenses were one of the two older children, M.K. or A.C., and their mother.

{¶33} However, at the March 2, 2017 dependency hearing in this second Agency case involving appellant's family, the Agency intake worker, Elisa Bartone, testified that the Agency again became involved with appellant's children upon learning that he was violating the no-contact order. Bartone spoke with the two oldest children at their school, and they separately informed her that they had visited their father's home after he was released from jail in December of 2016. Both their mother and their father's girlfriend had driven the children to their father's residence. The children told Bartone that they spent the night with their father and also saw him at their maternal grandmother's home.

{¶34} Bartone also explained that the children did not have a stable home at the time, and the two older children had frequent school absences.

{¶35} Appellant denies seeing his two older children after his release and in violation of the order but explained that he was allowed to see his youngest child, who

was an infant. Their mother had left all three of their children in the care of other family members around the time of his release.

{¶36} Once the Agency secured custody of the children, the no-contact order remained in place regarding the older two children for the duration of the proceedings. Notwithstanding, appellant had regular supervised visits with his youngest child, who was not subject to the order.

{¶37} The Agency caseworker, Cynthia Day, testified that appellant's attitude had improved since the beginning of the case. However, although he initially followed his mental health plan, he stopped treatment without being advised to discontinue. She confirmed that appellant had previously injured the two older children and even caused them to suffer broken bones, and because of the no-contact order it was impossible to observe appellant's interaction with the older children.

{¶38} Day confirmed that appellant failed to satisfy his mental health assessment. He attended the recommended counseling for approximately one month but then just stopped attending. In light of these facts, the trial court was troubled by appellant's unilateral decision to stop his mental health treatment.

{¶39} Day confirmed that the Agency looked into other possible family placements for the children. The maternal grandmother stated that she would take the children, but she never took action to visit the children or seek custody. And Day described the children's paternal grandmother as an unsuitable placement because she had prior children services issues when raising her own children.

{¶40} Day informed the court that appellant's visits with the youngest child go well and that appellant now calls to advise the Agency when he cannot attend a scheduled

visit or to explain his absence where he had not in the past. Appellant did not, however, consistently visit his youngest child.

{¶41} Appellant explained that he was often too tired from working afternoon shift to visit H.C. because the visits were scheduled in the mornings and he often would not get home from work until one in the morning. Appellant consistently pays child support.

{¶42} Day advised that although the older two children still have academic delays and behavioral issues, she has seen them both improve in their structured foster care home. Their current foster placement is not a family with the means to adopt them. These children previously had no structure. Day does not believe the children will have the structure, security, or permanency that they need to thrive without a grant of permanent custody to the Agency.

{¶43} Appellant testified and confirmed he still had a no-contact order with his two oldest children. He acknowledged he had anger issues in the past, but claims he has changed his ways.

{¶44} Appellant has maintained the same full-time job for a year and secured a home with his girlfriend about one month before the final hearing. Appellant works afternoon shift, but he acknowledges to have no childcare plans if his girlfriend gets a new job other than his mother, who according to Day, is unsuitable. Appellant's girlfriend does not have custody of her son but visits him often.

{¶45} The guardian ad litem believes it is in the children's best interest to grant permanent custody to the Agency in order to secure the permanency, attention, and care that they need.

{¶46} Our review of the evidence is consistent with the trial court's findings. Appellant's abuse of the two older children and alleged violation of the no-contact order caused the Agency's involvement with the family. At the time the Agency secured temporary custody, the children lacked a permanent and secure home and were not regularly attending school. After the Agency's involvement, appellant made significant progress by maintaining the same job for a year, paying child support, and securing a residence.

{¶47} However, and as the trial court found, appellant's unilateral decision to end his mental health treatment after one month was troubling in light of his domestic violence and child endangering convictions involving his child and his children's mother. And despite appellant's somewhat regular visits with his youngest child, appellant had a no-contact order against him that precluded him from having any contact with the older two children for the duration of the Agency's involvement. Because appellant could not visit with the older children, the court had no foundation to conclude that appellant's issues had improved or that he was capable of parenting three children under the age of ten.

{¶48} Accordingly, we do not find the trial court clearly lost its way and created a manifest miscarriage of justice upon finding that a grant of custody to the Agency was in the best interest of the children. Appellant's sole assigned error lacks merit.

{¶49} The trial court's decision is affirmed.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.


10