OPINION
{¶ 1} Appellant, Dwayne M. Bentley, appeals from the September 16, 2004 judgment entry of the Ashtabula County Court of Common Pleas, Juvenile Division, granting permanent custody of Casondra Bentley ("Casondra") and Bridgette Bentley ("Bridgette") to appellee, the Ashtabula County Children Services Board.
 {¶ 2} On October 19, 2001, appellee obtained emergency temporary custody of Casondra, d.o.b. October 14, 1991, and Bridgette, d.o.b. January 20, 1993. On October 22, 2001, appellee filed a complaint, alleging that Casondra appeared to be an abused child pursuant to R.C.2151.031(A), that Casondra and Bridgette were abused children based on R.C. 2151.031(C), and that both were neglected children as defined in R.C. 2151.03(A)(6). An emergency shelter care hearing was held on October 22, 2001. The trial court found probable cause regarding the necessity for the removal or continued removal of Casondra and Bridgette from the home of their father, appellant, and mother, Marian Spencer ("Ms. Spencer"). Also, on October 22, 2001, Jane L. Lesko ("GAL") was appointed as Casondra's and Bridgette's guardian ad litem.
 {¶ 3} A case plan was filed on November 8, 2001. A pretrial was held on November 19, 2001. On January 17, 2002, an adjudicatory, dispositional, and evidentiary hearing commenced, in which the trial court found abuse and neglect with respect to Casondra and determined that Bridgette was dependent. The November 8, 2001 case plan was adopted by the trial court, and Casondra and Bridgette were maintained in the temporary custody of appellee.
 {¶ 4} A second case plan was filed on March 21, 2002. On April 22, 2002, a hearing was held. The trial court continued the case plan, and Casondra and Bridgette were to remain in the temporary custody of appellee.
 {¶ 5} A third case plan was filed on August 29, 2002. On September 20, 2002, appellee filed a motion requesting modification of temporary custody to permanent custody. A dispositional hearing commenced on October 22, 2002, in which the trial court extended temporary custody to appellee.
 {¶ 6} On January 21, 2003, the GAL filed her report in which she recommended that appellee be granted permanent custody of Casondra and Bridgette, and a permanent custody hearing was held. At that hearing, the trial court noted that appellant failed to appear. A stipulation to the termination of parental rights was taken from Ms. Spencer. The parties agreed to delay the best interest portion of the hearing to a later date.
 {¶ 7} Holly Ogden ("Ogden"), an intake/compliance/caseworker with appellee, testified that she was referred to the instant case and conducted interviews with Casondra and Bridgette in October of 2001. According to Ogden, a school nurse noticed a fist print on Casondra's back and markings on Bridgette's face. Ogden stated that Casondra and Bridgette were removed on October 19, 2001. Ogden indicated that appellant failed to comply with any aspects of the November 2001 case plan.
 {¶ 8} On January 27, 2003, a fourth case plan was filed. A fifth case plan was filed on June 20, 2003. The GAL filed an amended report in which she recommended that it would be in the best interests of Casondra and Bridgette to be in the permanent custody of appellee. The best interest portion of the permanent custody hearing was held on July 21, 2003. At that hearing, Ms. Spencer entered a stipulation that it would be in the best interests of Casondra and Bridgette to be placed in the permanent custody of appellee so they can be adopted. Appellant, who was incarcerated, attended the hearing and did not agree to anything regarding Casondra and Bridgette.[1]
 {¶ 9} Ms. Spencer filed a motion to withdraw her stipulation to permanent custody on August 28, 2003. Also, on August 28, 2003, the best interest portion of the permanent custody proceeding pertaining to appellant was held. At that hearing, Patty Jackson ("Jackson"), a family caseworker with appellee, testified that she has been involved with the instant case since December 2, 2002. Jackson stated that appellee had not received any contact from appellant. Jackson indicated that Casondra was unable to be maintained in a foster home because of suicidal behaviors and sexual acting out and, thus, was in a residential treatment setting, Bellefaire Jewish Children's Bureau in Shaker Heights, Ohio. Jackson said that Bridgette had been placed with a maternal uncle, Robert Spencer ("Robert"). According to Jackson, the long term plans for Casondra and Bridgette would be to have Robert adopt them because both girls deserve permanency. Jackson further testified that she believed that Casondra and Bridgette were adoptable. Jackson indicated that Robert wanted to adopt both girls, had taken training through the Bair Foundation, and had completed foster care and adoption training as well as a psychological evaluation.
 {¶ 10} A hearing on Ms. Spencer's motion to withdraw her stipulation to permanent custody was held on September 2, 2003. According to the September 2, 2003 magistrate's decision, appellee's motion requesting modification of temporary custody to permanent custody was granted. Appellant filed his objections on September 16, 2003. In its February 10, 2004 judgment entry, the trial court overruled appellant's objection and denied Ms. Spencer's motion to withdraw her stipulation.
 {¶ 11} Pursuant to its February 18, 2004 judgment entry, the trial court adopted the September 2, 2003 magistrate's decision. The trial court granted appellee's motion requesting modification of temporary custody to permanent custody and ordered that appellant and Ms. Spencer were divested of any and all parental rights, privileges, and obligations except the right to appeal.[2] Appellant filed a timely notice of appeal. On June 30, 2004, this court in In re Bentley, 11th Dist. No. 2004-A-0010, 2004-Ohio-3513, reversed and remanded the trial court's judgment for failure to properly discuss all of the factors set forth in R.C. 2151.414(D)(1) through (5).[3]
 {¶ 12} On August 6, 2004, the magistrate issued an amended decision which again awarded permanent custody of the children to appellee. Appellant filed his objections on August 16, 2004, and requested a hearing.
 {¶ 13} Pursuant to its September 16, 2004 judgment entry, the trial court adopted the August 6, 2004 amended magistrate's decision without an additional hearing. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 14} "[1.] The court erred in failing to discuss the statutory R.C.2151.414(D) factors on remand.
 {¶ 15} "[2.] The juvenile court erred in finding that termination of parental rights was in the best interests of the subject children.
 {¶ 16} "[3.] The trial court failed to make an independent analysis of objections to the amended magistrate's decision."
 {¶ 17} Because appellant's first and second assignments of error are interrelated, they will be addressed in a consolidated manner. In his first assignment of error, appellant argues that the trial court erred in failing to discuss the statutory R.C. 2151.414(D) factors on remand. In his second assignment of error, appellant alleges that the trial court erred in finding that termination of parental rights was in the best interests of the subject children.
 {¶ 18} R.C. 2151.414 sets forth guidelines which a juvenile court must follow. Specifically, R.C. 2151.414(B)(1) establishes a two-pronged analysis and permits the juvenile court to grant permanent custody of the child to the agency if the court determines by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to the agency and that any of the following apply:
 {¶ 19} "(a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 20} "(b) The child is abandoned.
 {¶ 21} "(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 {¶ 22} "(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999."
 {¶ 23} Here, pursuant to the magistrate's August 6, 2004 amended decision, which was adopted by the trial court on September 16, 2004, the magistrate indicated that "Casondra and Bridgette were removed from [Ms. Spencer's and appellant's] custody on October 19, 2001 and have remained in the temporary custody of [appellee] ever since." R.C. 2151.414(B)(1)(d).
 {¶ 24} Next, the magistrate and the juvenile court proceeded to the second prong of the statutory analysis, to wit: the determination that it is in the best interest of the children to grant permanent custody to appellee. In determining the best interest of the child at a permanent custody hearing, R.C. 2151.414(D) mandates that the trial court must consider all relevant factors, including, but not limited to, the following:
 {¶ 25} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 26} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 27} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 28} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 29} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 30} We have consistently held that the provisions of R.C. 2151.414(D) are mandatory and "`must be scrupulously observed.'" In re Kelley, 11th Dist. No. 2002-A-0088, 2003-Ohio-194, at ¶ 24, quoting In re Hommes
(Dec. 6, 1996), 11th Dist. No. 96-A-0017, 1996 Ohio App. LEXIS 5515, at 1. See, also, In re Litz, 11th Dist. No. 2001-G-2367, 2001-Ohio-8903, at 14; In re Ranker (Oct. 6, 2000), 11th Dist. No. 99-P-0072, 2000 Ohio App. LEXIS 4662, at 21; In re Jacobs (Aug. 25, 2000), 11th Dist. No. 99-G-2231, 2000 Ohio App. LEXIS 3859, at 12; In re Ethington (July 23, 1999), 11th Dist. No. 98-T-0084, 1999 Ohio App. LEXIS 3419, at 8; In reAlexander (Dec. 19, 1997), 11th Dist. No. 96-T-5510, 1997 Ohio App. LEXIS 5742, at 7.
 {¶ 31} The failure to discuss each of the R.C. 2151.414(D) factors when reaching a determination concerning the best interest of the child constitutes prejudicial error. Kelley, supra, at ¶ 25, citing Jacobs,
supra, at 5. See, also, Litz, supra, at 5; In re Bailey (July 20, 2001), 11th Dist. No. 2001-G-2340, 2001 Ohio App. LEXIS 3293, at 5; In reCongos (Nov. 9, 2000), 11th Dist. No. 2000-L-092, 2000 Ohio App. LEXIS 5251, at 2; Ranker, supra, at 7-8; Ethington, supra, at 3-4; Alexander,
supra, at 4-5; Hommes, supra, at 4.
 {¶ 32} In the case at bar, the amended magistrate's decision listed the factors set forth in R.C. 2151.414(D)(1) through (5), and acknowledged that it was required to consider all of these factors. Both the amended magistrate's decision and the trial court's judgment entry stated that the factors contained in R.C. 2151.414(D) were considered, and that the best interest of the children would be served by a grant of permanent custody to appellee.
 {¶ 33} The twenty-one page amended magistrate's decision, which was adopted by the trial court, does address and discuss each statutory factor contained in R.C. 2151.414(D)(1) through (5).
 {¶ 34} Pursuant to R.C. 2151.414(D)(1), the magistrate stated that appellant had not visited with Casondra and Bridgette since they were removed from his custody in October 2001, due to his lack of cooperation with appellee and the no contact order. The magistrate indicated that Bridgette is currently placed with her maternal uncle, Robert, who also regularly visits with Casondra and participates in counseling with her. The magistrate stressed that Robert is interested in adopting both children. The magistrate said that Casondra and Bridgette continue to visit each other and have a good relationship.
 {¶ 35} With regard to R.C. 2151.414(D)(2), the magistrate's decision reflects the wishes of the children as expressed directly by them or through the GAL with due regard for their maturity. Again, the magistrate stressed that Casondra and Bridgette continue to visit each other and have a good relationship. The magistrate indicated that Casondra and Bridgette wish to be placed together eventually at their maternal uncle's, Robert's, home. The magistrate stated that the GAL "recommends that it would be in [Casondra's and Bridgette's] best interest to be placed in the permanent custody of [appellee] because of the instability of both parents, the severe neglect that the girls have endured and the severe abuse perpetrated by [appellant.] [The GAL] recommends that the children be placed together in an adoptive setting."
 {¶ 36} With respect to R.C. 2151.414(D)(3), the magistrate's decision discusses the custodial history of Casondra and Bridgette, including their various placements since October 19, 2001.
 {¶ 37} Pursuant to R.C. 2151.414(D)(4), the magistrate's decision indicates that Casondra and Bridgette need a legally secure and permanent placement and that their uncle, Robert, is interested in adopting both girls. The magistrate explained that a legally secure and permanent placement cannot be achieved without a grant of permanent custody to appellee.
 {¶ 38} Regarding R.C. 2151.414(D)(5), the magistrate addressed whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to appellant and the children. The magistrate stated that appellant is incarcerated and awaiting trial on twelve counts of rape against one of the children.
 {¶ 39} Based on the foregoing, the trial court's determination that it is in the best interest of Casondra and Bridgette to be permanently placed in the custody of appellee is supported by clear and convincing evidence. We do not agree with appellant's contention that because Casondra has psychological problems and is in a residential facility, she is not adoptable, therefore, permanent custody is not in her or Bridgette's best interest. Again, Jackson, a caseworker with appellee, testified that she believed that Casondra and Bridgette were adoptable. We must note that although the trial court considered Casondra's and Bridgette's adoptability before making its decision, R.C. 2151.414(D) does not require that adoptability be firmly established before permanent custody can be granted. See In re Cornish (Apr. 23, 1997), 9th Dist. Nos. 17994 and 18008, 1997 Ohio App. LEXIS 1612, at 14. Appellant's first and second assignments of error are without merit.
 {¶ 40} In his third assignment of error, appellant alleges that the trial court failed to make an independent analysis of objections to the amended magistrate's decision.
 {¶ 41} Appellant's reliance on Shull v. Shull (1999),135 Ohio App.3d 708, for the proposition that the trial court failed to conduct a thorough independent review of the proceedings is misplaced. InShull, the appellant filed a motion for modification of parental rights and responsibilities, claiming it would be in the children's best interest to reside with him. Id. at 709. The magistrate issued a decision recommending that the appellant's motion be denied, and the trial court adopted the decision on the same date. Id. at 710. The appellant filed a timely objection to the magistrate's decision, requested a transcript, and asked for additional time to elaborate on the objections. Id. The trial court overruled the appellant's objections because they failed to comply with Civ.R. 53(E)(3)(b). Id. On appeal, the Third District reversed and remanded the trial court's decision, holding that the trial court erred when it adopted the magistrate's decision prior to receiving the transcripts. Id. at 711.
 {¶ 42} Here, in contrast to Shull, supra, the trial court reviewed the transcripts and conducted hearings prior to adopting the initial magistrate's decision on February 18, 2004, recommending permanent custody to appellee. Again, this court reversed and remanded the instant case for the magistrate to discuss the factors set forth in R.C.2151.414(D)(1) through (5). On August 6, 2004, the magistrate issued an amended decision, which included a discussion of all of the R.C.2151.414(D) factors. No further hearings were necessary, thus, no additional transcripts needed to be prepared. Therefore, the trial court reviewed and adopted the amended magistrate's decision on September 16, 2004. There is no evidence that the trial court failed to conduct a thorough independent review of the proceedings. Appellant's third assignment of error is without merit.
 {¶ 43} For the foregoing reasons, appellant's assignments of error are not welltaken. The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.
Grendell, J., concurs, O'Neill, J., dissents with Dissenting Opinion.
[1] Appellant was incarcerated for domestic violence against Casondra and Bridgette and for twelve counts of rape against Casondra.
[2] Ms. Spencer's appeal, Case No. 2004-A-0023, was dismissed on May 28, 2004, for failure to prosecute.
[3] The magistrate's September 2, 2003 decision failed to discuss the factors set forth in R.C. 2151.414(D)(2), (4), and (5).