OPINION
{¶ 1} Pamela Scott and Randy Scott, appellants, appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, in which the court granted the motion of Franklin County Children Services ("FCCS"), appellee, for permanent custody.
 {¶ 2} A.S. was born on January 3, 2000, and is the daughter of Pamela and Randy. Although Pamela and Randy are now divorced, they still live together. A.S. resided with her parents for approximately one year after her birth, and has lived with her foster mother, Jennifer Waltz, since January 25, 2001. Pamela is mildly mentally handicapped, with an IQ of 69. Randy functions in the normal range and has an IQ of 91. A.S. has numerous developmental problems, both of the mental and physical nature. Permanent custody of A.S.'s three older siblings was previously granted to FCCS. One of A.S.'s older sisters alleged she was sexually abused by Randy.
 {¶ 3} On February 16, 2001, A.S. was found to be neglected and dependent and was committed to the temporary custody of FCCS. On November 27, 2002, FCCS filed a motion for permanent custody. On July 19, 2004, and March 16, 2005, a hearing was held on FCCS's motion. Pamela and Randy were each represented by counsel, and A.S. was represented by a guardian ad litem ("GAL"). Pamela and Randy, as well as other witnesses, testified at the hearing. On March 25, 2005, the court issued a judgment, in which it granted FCCS's motion for permanent custody. Pamela and Randy filed separate notices of appeal with regard to the trial court's judgment and filed separate appellate briefs. The cases have been consolidated herein for purposes of appeal. Pamela asserts the following assignment of error:
The trial court erred in granting permanent custody of [A.S.] to Franklin County Children Services[.]
Randy asserts the following assignments of error:
[I.] The trial court erred to the prejudice of the appellant by failing to appoint separate counsel for the minor [A.S.]
[II.] The trial court committed plain error by permitting the appellee to compel the subject child's parents to testify "as if upon cross-examination[.]"
 {¶ 4} Pamela argues in her assignment of error that the trial court erred in granting permanent custody of A.S. to FCCS. Specifically, Pamela claims that the trial court's decision was essentially based upon the theory that someone else could do a better job of raising A.S. Pamela also points out that, because the foster mother is not certain she wants to adopt A.S., A.S. may be adopted by a person who is unknown to her and unknown to the court. Pamela contends that the crux of the problem in this case is that R.C. 2151.413 may inflict cruelty on A.S. because she has been taken away from her biological parents, and the foster family may not adopt her. Pamela urges that, if A.S.'s best interests are truly paramount, FCCS must have a plan that extends beyond the mere hope that A.S. will be adopted before it cuts the bonding and other natural ties that exist between A.S. and her natural parents.
 {¶ 5} A trial court's determination in a permanent custody case will not be reversed on appeal unless it is against the manifest weight of the evidence. In re Andy-Jones, Franklin App. No. 03AP-1167, 2004-Ohio-3312. "Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Young v. Univ. ofAkron, Franklin App. No. 04AP-318, 2004-Ohio-6720, at ¶ 25, citing C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, paragraph one of the syllabus. "Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact `clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.'" Caldwellv. The Ohio State Univ., Franklin App. No. 01AP-997, 2002-Ohio-2393, at ¶ 59, quoting State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 6} We disagree with Pamela's portrayal of the circumstances in the present case. Initially, Pamela's concerns relating to A.S.'s adoption possibilities provide no grounds for reversal. Nothing appears in the current version of R.C. 2151.414(D) that would indicate the trial court must consider the probability that the child will be adopted before granting permanent custody. See In re A.B., Summit App. No. 22659, 2005-Ohio-4936, at ¶ 16; In re Bentley, Ashtabula App. No. 2004-A-0075, 2005-Ohio-1257, at ¶ 39; In re Liston (Aug. 27, 1999), Portage App. No. 98-P-0040. Notwithstanding, considerations regarding the adoption of the child may be pertinent under R.C. 2151.414(D)(4). See, e.g., In re G.B.,
Franklin App. No. 04AP-1024, 2005-Ohio-3141, at ¶ 23; In re Damron,
Franklin App. No. 03AP-419, 2003-Ohio-5810, at ¶ 25. In the present case, the current foster mother, Jennifer Waltz, testified that she was "definitely" interested in adopting A.S., but she had not conclusively decided as of the date of the hearing. Adoption into a secure, safe environment, whether it be with Waltz or any other family, cannot take place without FCCS first gaining permanent custody of A.S.
 {¶ 7} Further, the present case is not simply one in which the trial court believed someone other than Pamela could better raise A.S., as Pamela suggests. To the contrary, the return of A.S. to Pamela's custody would not be in A.S.'s best interests. Pamela continues to reside with Randy, against whom there have been allegations of sexual misconduct with one of A.S.'s sisters and who refuses to undergo sexual offender treatment. Pamela does not believe that Randy was involved in any sexual abuse and sees no reason to protect A.S. from Randy. Pamela has no separate housing and is unemployed, despite the fact that her case plan calls for her to have independent housing and seek employment. In addition, Dr. Michael Wagner testified that Pamela lacked parenting knowledge and failed to identify and resolve basic parenting issues with A.S. Dr. Wagner further testified that Pamela had a lack of insight into her problems and blamed others, including FCCS, for her problems. Dr. Wagner also stated that Randy had poor knowledge of his daughter's development, had insufficient strategies to resolve problems and parenting issues, and tended to have non-conventional beliefs that violated what is considered standard behavior and thoughts. Megan Sparks, a caseworker for FCCS, testified that A.S. demonstrated little bonding with Pamela or Randy and showed no displeasure when she had to leave the visitations with her parents. Sparks also testified that, at times, Pamela failed to appropriately interact with A.S. during visitations and exhibited inappropriate parenting skills, and Randy was not very interactive with A.S. She also never saw A.S. go to Pamela for comfort or consoling. The Scotts' former caseworker, Jenna Kitchen, also testified that Pamela did not exhibit appropriate parenting skills, was inconsistent in discipline and instruction, and lost her patience with A.S. Kitchen also stated that Randy had little interaction with A.S. and showed little bonding with her. Kitchen testified she never saw A.S. sad or upset when visitation with her parents ended. We find the court properly weighed all of this testimony in considering R.C. 2151.414(B), (D), and (E) and did not base its decision merely upon the rationale that someone else could do a better job of raising A.S. Therefore, we find there was competent, credible evidence presented to support the trial court's finding that it is in A.S.'s best interest that FCCS be granted permanent custody. As Pamela's arguments are without merit, we overrule her assignment of error.
 {¶ 8} Randy argues in his first assignment of error that the trial court erred when it failed to appoint separate legal counsel for A.S. At the permanent custody hearing, A.S. was represented by only a GAL. In support of his argument, Randy points to the Ohio Supreme Court's opinion in In re Williams, 101 Ohio St.3d 398, 2004-Ohio-1500, in which the court found "[p]ursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." Id., at syllabus. The "certain circumstances" to which the court referred are when the wishes of the child and the recommendation of the GAL conflict.
 {¶ 9} In the present case, the GAL and FCCS assert that Randy lacks standing to raise the issue of independent counsel for A.S. However, we need not address this issue, because, even if Randy had standing to present this argument, we find A.S. was not entitled to separate legal counsel. In In re Brooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, a mother argued that her two children should have been appointed separate legal counsel in a permanent custody matter. This court analyzed whether the case involved the "certain circumstances" referred to in In reWilliams under which independent counsel must be appointed. We concluded that any error in the trial court's failure to directly probe the children's wishes, for purposes of determining whether they should be appointed separate counsel because their wishes were incongruent with the recommendation of the GAL, was harmless. Brooks, at ¶ 87. We found the court was made adequately aware of the children's wishes with respect to placement based upon the uncontroverted testimony of the children's psychologist that they desired not to be returned to their mother's custody, along with abundant evidence supporting the trial court's findings that the children's best interests were served by awarding permanent custody to FCCS. Id.
 {¶ 10} Here, any failure of the trial court to determine A.S.'s wishes as to custody was, at the most, harmless error. There is no evidence that A.S.'s wishes were incongruent with the recommendation of the GAL. A.S. is low-functioning, has limited communication abilities, and is unable to express her wishes as to custody. Under these circumstances, separate counsel would be of no assistance, as counsel would be unable to determine the desires of the child in order to represent her interests. Therefore, any attempt by the trial court to ascertain A.S.'s custodial desires would have been futile.
 {¶ 11} Further, given A.S.'s functional impairments, this case is unlike those cited by Randy, such as In re Moore, 158 Ohio App.3d 679,2004-Ohio-4544, and In re T.V., Franklin App. No. 04AP-1159, 2005-Ohio-4280. In In re Moore, also a permanent custody matter, the Seventh District Court of Appeals remanded the matter to the trial court to conduct an independent investigation into whether the "certain circumstances" that the Supreme Court held in In re Williams warranted independent counsel existed for the two children in Moore. The court found remand was necessary to determine the children's wishes because the GAL made no mention of having talked with the children to determine whether they wished to return to the custody of their parents; the children were mature enough to express their wishes; whether the children required counsel was not discernible from the record; there was some evidence that, when the mother went to visits, the children were excited to see her and ran out to the lobby to greet her; and there was some evidence that the children loved their mother. In the present case, none of the circumstances present in In re Moore exist. The GAL indicated she was unable to communicate with A.S. about her wishes because of A.S.'s disability; A.S. was not capable of expressing her wishes; there existed evidence via the caseworkers and the GAL that A.S. demonstrated little attachment and bonding with Pamela and Randy; and there was testimony that A.S. was not sad when she left visitations and never talked about her parents when she was away from them. The GAL also specifically stated in her report that A.S. never evidenced a clear desire to return to the custody of her parents. Given these circumstances, remanding the matter for a determination as to whether "certain circumstances" exist, as the court did in In re Moore, would be fruitless. Unlike In re Moore, the record herein clearly indicates that the GAL attempted to ascertain the child's wishes, the child was incapable of expressing her wishes, and there was little evidence in the record that the child had any bond with her parents. Therefore, we find In re Moore distinguishable.
 {¶ 12} In In re T.V., we found that, because the trial court failed to discern whether the children's custodial wishes in a permanent custody case conflicted with the GAL's views, the matter had to be remanded to the trial court to determine whether separate counsel for the children should have been appointed. We held that FCCS could not argue that the children's views are aligned with the GAL's views when no one determined what the children's views were either before or during the hearing; no one ascertained whether the children were capable of expressing their own wishes about placement; there was no evidence that the GAL ever met with, interviewed, or even observed the children; and the GAL's report did not take a position on the best interests of the children. Id., at ¶ 70. However, in the present case, the GAL indicated she had personally observed and interacted with A.S. and specifically determined that A.S. was incapable of expressing her wishes concerning placement because she is at a lower level of functioning, and she made a recommendation on permanent custody based upon the best interests of A.S. It is the duty of a GAL to request an attorney for the child where a conflict does exist. In this case, there was no conflict. The present case is inapposite to Inre T.V., and remand is not necessary to determine whether A.S. was entitled to separate counsel.
 {¶ 13} We also note that Randy requests that, if this court determines that no remand is necessary to determine whether the "certain circumstances" referred to in In re Williams exist, we should certify the present case as being in conflict with the Seventh Appellate District's decision in In re Moore. However, as we have found our case factually distinguishable from In re Moore, the present case is not in conflict with it. See State v. Stafford, Noble App. No. 265, 2002-Ohio-7184, at ¶ 6 (no conflict where cases are factually distinguishable). Therefore, Randy's motion to certify a conflict is denied. For these reasons, Randy's first assignment of error is overruled.
 {¶ 14} Randy argues in his second assignment of error that the trial court erred when it permitted FCCS to compel him to testify as if upon cross-examination. Specifically, Randy asserts that permitting FCCS to compel him to testify as if on cross-examination, given this case involves allegations of neglect, is contrary to the Fifth Amendment of the United States Constitution. Randy relies upon the decision of the Eighth District Court of Appeals in In re Knight (1999),135 Ohio App.3d 172, for the proposition that the Fifth Amendment protection against self-incrimination applies in juvenile proceedings and, where an allegation of neglect is made, it is improper to compel a parent to testify.
 {¶ 15} Randy failed to object at trial with regard to this issue. A party who fails to object to testimony at trial waives error on appeal relative to that testimony unless there was plain error. State v. Ballew
(1996), 76 Ohio St.3d 244, 251. In civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error seriously affects the basic fairness, integrity, or public reputation of the judicial process itself. See Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, syllabus; Inre McLemore, Franklin App. No. 03AP-714, 2004-Ohio-680, at ¶ 11.
 {¶ 16} In the present case, we find no plain error. Although we agree the Fifth Amendment protection against self-incrimination applies in juvenile proceedings, see In re Billman (1993), 92 Ohio App.3d 279, the circumstances in the present case and In re Knight are inapposite. In Inre Knight, the trial court compelled the parent to testify at trial, despite the parent's having invoked the Fifth Amendment. In the present case, the element of compulsion is lacking, as Randy testified of his own free will. Further, in the present case, Randy never asserted his Fifth
Amendment privilege, as did the parent in In re Knight. In addition, inIn re Knight, the parent specifically raised at trial the possibility of being charged with child endangering because of her testimony. In the present case, Randy never asserted he could be prosecuted for any crime. Although it could be argued that Randy feared being criminally prosecuted for the sexual abuse of A.S.'s sister, there was no testimony elicited from Randy with regard to this sexual abuse allegation, aside from whether he participated in sexual abuse treatment. Also, In re Knight
involved a determination as to whether the child was neglected, which necessarily involves proving fault on behalf of the parent. In contrast, a permanent custody proceeding focuses on the best interests of the child. For these reasons, we find the trial court did not err in permitting FCCS to question Randy as if on cross-examination. Therefore, Randy's second assignment of error is overruled.
 {¶ 17} Accordingly, Pamela's assignment of error is overruled, Randy's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Klatt and McGrath, JJ., concur.