[Cite as *In re E.M.J.*, 2023-Ohio-3605.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

IN RE:

E.M.J., E.M., B.M.,

MINOR CHILDREN

---

**OPINION AND JUDGMENT ENTRY**
**Case Nos. 23 BE 0025, 23 BE 0026, 23 BE 0027**

---

Juvenile Appeals from the
Court of Common Pleas, Juvenile Division, of Belmont County, Ohio
Case Nos. 21 JC 372, 21 JC 373, 21 JC 374

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, 52160 National Road, St. Clairsville, Ohio 43950, for Appellee and

*Atty. Julie Dreher*, Dreher Law, LLC, P.O. Box 405, Killbuck, Ohio 44637, for Appellant.

Dated: September 29, 2023

**HANNI, J.**

{¶1} Appellant, T.B. (Mother), appeals from a Belmont County Common Pleas Court judgment terminating her parental rights as to her three children and granting their permanent custody to Appellee, the Belmont County Department of Job and Family Services (the Agency).

{¶2} Mother has three children: E.M. Jr. (d/o/b 1/12/11); E.M. (d/o/b 8/15/12); and B.M. (d/o/b 7/13/14). E.M. is the father of E.M. Jr. and E.M.; R.B. is the father of B.M. Neither father is a party to these appeals.

{¶3} On September 14, 2021, the Agency filed complaints alleging each of the children was a dependent child. At the time the complaints were filed, neither Mother nor either of the fathers were the children's legal custodian. The children were in the custody of Mother's parents who then voluntarily placed the children in the Agency's temporary custody. A case plan was put in place for Mother and the children on October 13, 2021.

{¶4} On December 3, 2021, the trial court adjudicated the children dependent and placed them in the Agency's temporary custody. On January 27, 2022, E.M. Jr. and E.M. were moved from their prior foster home to their current foster home. On February 11, 2022, B.M. joined her brothers at their current foster home.

{¶5} On February 7, 2023, the Agency filed a motion for permanent custody. The court held a hearing on the motion where it heard testimony from Mother, by way of video due to her incarceration, the children's guardian ad litem, the children's foster mother, and several others. Neither father appeared.

{¶6} After considering the evidence, the trial court granted the Agency's motion for permanent custody and terminated all parental rights. The court found that the children had been in the Agency's temporary custody for at least 12 of the past 22 months and that it was in their best interest to grant permanent custody to the Agency.

{¶7} Mother filed a timely notice of appeal on June 7, 2023. She now raises four assignments of error for our review.

{¶8} A parent's right to raise his or her children is an essential and basic civil right. *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), citing *Stanley v.*

*Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "Permanent termination of parental rights has been described as 'the family law equivalent of the death penalty in a criminal case.'" *In re Hayes*, 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist.1991). However, this right is not absolute. *In re Sims*, 7th Dist. Jefferson No. 02-JE-2, 2002-Ohio-3458, ¶ 23. In order to protect a child's welfare, the state may terminate parents' rights as a last resort. *Id.*

**{¶9}** We review a trial court's decision terminating parental rights and responsibilities for an abuse of discretion. *Sims*, 7th Dist. Jefferson No. 02-JE-2, ¶ 36. Abuse of discretion implies that the court's attitude was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶10}** Mother's first assignment of error states:

THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE AGENCY AND TERMINATING MOTHER'S PARENTAL RIGHTS BECAUSE THE TRIAL COURT'S JUDGMENT IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

**{¶11}** Mother argues the trial court's judgment is not supported by clear and convincing evidence. She points to testimony that the children love her, miss her, and enjoy their visits with her. In particular, Mother notes that B.M. did not want to terminate her relationship with Mother and claims the trial court failed to consider the impact this would have on B.M. She also asserts the trial court's statement that her Eastern Ohio Correction Center (EOCC) release date was unknown. To the contrary, Mother claims the evidence was that she was to be released in April or May 2023. Next, Mother asserts the trial court's finding that the children were not in Mother's care when they were placed in the Agency's custody was incorrect. She claims there was no evidence that she ever ceased contact with the children. And she argues the fact that she has struggled with sobriety is not a sufficient basis to permanently remove the children from her care. Mother further contends she was making improvements in the months preceding the permanent custody hearing, which the court failed to consider.

**{¶12}** Pursuant to R.C. 2151.414(B)(1):

[T]he court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * * and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶13}** Thus, in order to grant permanent custody to the agency, the trial court must make one of the five findings set out in R.C. 2151.414(B)(1)(a) through (e) and make a best interest finding.

**{¶14}** In this case, the trial court found that the children have been in the custody of the Agency for at least 12 months of a consecutive 22-month period. This fact is

undisputed. Additionally, the trial court found that the children have been abandoned by their respective fathers.

{¶15} In considering the child's best interest, the trial court shall consider all relevant factors, including, but not limited to:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1).

{¶16} The trial court found that it is in the children's best interest to be placed in the Agency's permanent custody. In reaching this conclusion, the court analyzed the R.C. 2151.414(D)(1) factors.

Case Nos. 23 BE 0025, 23 BE 0026, 23 BE 0027

**{¶17}** As to the first factor, the trial court analyzed the children's relationship with their parents and foster parents. As to B.M.'s father, the court found that he never cultivated a relationship with B.M. B.M.'s father also made statements to Agency representatives that B.M. would be better off in its custody, that he did not want to work a case plan, and that he did not want to be involved in the case. As to the boys' father, the court noted that he has been incarcerated during the pendency of these proceedings, has admitted that he cannot care for E.M. Jr. and E.M. at this time, and has stated that their best interest would be served by a grant of permanent custody to the Agency. The court acknowledged that there was a relationship between the father and his children at some point, but that over the last several years, their interaction has been limited and uncertain.

**{¶18}** As to Mother, the court noted that for a substantial period of time prior to the initiation of these proceedings, the children were in the custody of their maternal grandparents. The court stated that it did not doubt that Mother loves her children and would like to have them returned to her care. But it found this was not in the children's best interest. In support, the court cited Mother's extensive criminal/drug history, including seven periods of incarceration since September 2021. One of Mother's arrests even occurred during a visitation with the children. She has repeatedly tested positive for methamphetamine, amphetamine, THC, and cocaine. Mother also brought drug paraphernalia to a visit with the children. The children found the paraphernalia and reported it to the Agency. The court further found that Mother routinely arrived late for visits, canceled visits, and failed to show up for visits with the children. Further, E.M. Jr. and E.M. have requested to no longer be required to visit with Mother. The court found that Mother's history of drug use and incarceration have adversely affected her interaction and relationship with the children.

**{¶19}** As to the children's foster parents, the court noted the three children are all together with foster parents who intend to adopt them. It noted the children are well-cared for and all of their healthcare needs are being met. Further, the children have developed a loving and appropriate relationship with their foster parents, with whom they have resided for over one year.

Case Nos. 23 BE 0025, 23 BE 0026, 23 BE 0027

{¶20} As to the second best interest factor, the trial court found the children have expressed to their guardian ad litem (GAL) that they want to remain with their foster parents and be adopted by them.

{¶21} As to the third factor, the court noted that E.M. Jr. and E.M. were placed in the legal custody of their maternal grandparents on October 28, 2019, and B.M. was placed with them on February 7, 2020. And the children have now been with their foster parents for over one year.

{¶22} As to the fourth factor, the court found that the children are in desperate need of a legally secure placement, which has only been achieved since they began residing with their foster parents. The GAL opined that a legally secure placement can only be achieved by a grant of permanent custody and the court agreed.

{¶23} Finally, as to the fifth factor of whether any of the factors in R.C. 2151.414(E)(7) to (11) apply in relation to the parents and the children, the court found that none of the referenced factors applied in this case. These factors have to do with certain crimes involving children, the parent placing the child in a substantial risk of harm, the parent abandoning the child, and the parent having their parental rights involuntarily terminated as to another child. (R.C. 2151.414(D)(1)(e)).

{¶24} The evidence supports the trial court's findings.

{¶25} The children's therapist Kortney Hillson-Pitts discussed what the children have shared with her. Hillson-Pitts stated that E.M. Jr. has expressed that he likes his foster home and wants to stay there. (Tr. 41). He has expressed that he worries about Mother because of things he has witnessed in the past such as Mother's suicide attempt. (Tr. 41). E.M. Jr. has told Hillson-Pitts that he misses Mother but that their visits did not go well and he did not always want to go to the visits because he did not know what would happen with Mother. (Tr. 42). She testified that E.M. Jr. has not indicated that he wishes to return to Mother's care. (Tr. 42). As to E.M., Hillson-Pitts testified that E.M. has told her that he loves Mother but he does not want to live with her. (Tr. 44). E.M. wishes to live with his foster parents. (Tr. 44). She testified that when she spoke with the children about the possibility of adoption, the two boys were excited but B.M. was "a little upset." (Tr. 45). B.M. expressed to Hillson-Pitts that she loves and misses Mother. (Tr. 47). However, Hillson-Pitts stated that B.M. does not want to return to Mother's care. (Tr. 47-

48). B.M. just wants to see Mother. (Tr. 47-48). B.M. expressed that she enjoys being at her foster home. (Tr. 48). Hillson-Pitts opined that she has seen the children become happier since she started counseling them in March of 2022, which she attributed to the predictability and stability of their foster home. (Tr. 48).

**{¶26}** The children's foster mother, Tiffany Beck, testified that E.M. Jr. and E.M. were placed with her and her husband on January 27, 2022, and B.M. was placed with them on February 11, 2022. (Tr. 70). She stated the children have become very close with her sister and brother-in-law and their three children as well as her parents, brothers, mother-in-law, and sister-in-law. (Tr. 73). They are considered part of the family. (Tr. 73). They have taken family vacations and gone to family weddings. (Tr. 73). Beck stated that the children are all involved in 4-H and that they also participate in soccer, baseball, and dance. (Tr. 74).

**{¶27}** Beck stated that when the children came to her family they were not up to date on their health care needs. (Tr. 75). They are now current on their eye care, dental care, and primary care. (Tr. 75). She stated various medical needs had not been addressed such as both boys needing glasses and ADHD medication and B.M. requiring care for rotted teeth. (Tr. 75-76).

**{¶28}** Beck next testified about the children's visits with Mother. She kept track of all of the children's visits with Mother. Mother was required by the Agency to call the morning of the visit to confirm that she would be attending. If Mother did not call, the visit was cancelled. From March 2022 through November 2022, Mother failed to attend seven visits, either arrived late or left early from seven more visits, and cancelled 26 visits. (Tr. 83-92).

**{¶29}** Beck told the court that she and her husband wished to adopt the children if it granted permanent custody to the Agency. (Tr. 93). She testified that if Mother completed her intervention in lieu of conviction program and remained drug-free and responsible, she would allow the children to have contact with Mother after she and her husband adopted them. (Tr. 94). Beck said it would be in the children's best interests to visit Mother if she was drug-free and healthy. (Tr. 95).

**{¶30}** Lauren Battistone is a social service aide with the Agency. She supervised Mother's visits with the children. Her testimony regarding cancelled visits, Mother failing

to attend, and Mother leaving early or coming late corroborated Beck's testimony. (Tr. 107-157). Mother also did not appear at a scheduled visit on B.M.'s birthday. (Tr. 128). Battistone went into detail about some of the visits. Some visits went well where Mother and the children painted, played, and talked about school. (Tr. 113-117). But at other visits Mother talked to the children about being in jail, used profanity with them, and did not interact with them. (Tr. 133-134, 140-141). And at one particular visit, B.M. found a marijuana pipe with residue in Mother's purse. (Tr. 146). B.M. told Battistone what she found. (Tr. 146). E.M. Jr. became angry because Mother had told him she was no longer using drugs and an explosive argument ensued between Mother and E.M. Jr. (Tr. 146-147). And at one of the most recent visits, Mother arrived smelling of alcohol and admitted to using marijuana before the visit. (Tr. 157). She also had a methamphetamine pipe on her person. (Tr. 157). The Agency had to call police for assistance as they could not control Mother. (Tr. 156). Police arrested Mother for a probation violation. (Tr. 157). Battistone also testified about Mother having active warrants for her arrest, losing her job, being evicted from her apartment, and being homeless. (Tr. 124-126, 137).

{¶31} LeAnn Boston was Mother's case manager. Boston stated that during the pendency of the case, Mother reported living at six different addresses, homelessness, and jail. (Tr. 208). Thus, Boston opined Mother did not meet her case plan goal of stable housing. (Tr. 208). As to her goal of transportation, Boston reported that Mother did have a car at one point but she reported that one of the children's fathers stole it from her. (Tr. 209-210). As to the goal of maintaining employment, Boston stated that Mother reported eight different places of employment during this case. (Tr. 210-218). The only one Boston received verification from was McDonald's. (Tr. 218). Thus, Boston opined Mother did not meet her case plan goal of maintaining employment. (Tr. 218). As to the goal of complying with drug testing, Boston stated that Mother tested positive numerous times for drugs including methamphetamine, amphetamine, THC, cocaine, and fentanyl. (Tr. 218-228). Boston said that Mother did complete parenting classes as required by the case plan. (Tr. 228).

{¶32} Tracy Pritchard is the children's GAL. He stated that he had met with the children multiple times, met with the foster family, and had contact with the Agency. (Tr.

297, 299). His only contact with Mother was at family team meetings. (Tr. 297). He offered to meet with Mother but Mother did not respond to the offer. (Tr. 297).

**{¶33}** Pritchard met with the children individually to discuss their wishes. (Tr. 298). He stated that each of the children expressed to him that they wished to remain in their foster home and be adopted by their foster family. (Tr. 298-299). Pritchard also expressed his opinion that permanent custody to the Agency was in the children's best interests. (Tr. 299). He based his opinion on the long relationship the children have had with their foster family, that being over 12 months, and the children's need for a legally secure placement. (Tr. 299-300).

**{¶34}** Mother testified that she loves her children. (Tr. 332). She opined that it is in their best interest to be with her. (Tr. 332). She stated that their fathers are not in their lives and she was always the one to care for them. (Tr. 332). Mother stated that visits had been going well with the children and that they miss her. (Tr. 333).

**{¶35}** Mother's supervisor in her intervention-in-lieu-of-conviction program, John Gossett, testified regarding Mother's criminal history. Gossett stated that Mother was placed under his supervision in August 2022 when she pleaded guilty to a third-degree felony possession of drugs charge. (Tr. 12). Mother was unable to complete the program however due to: positive tests for marijuana; positive tests for alcohol; possession of drug paraphernalia; a positive test for methamphetamine; and positive tests for cocaine. (Tr. 22-23). Mother admitted to these violations, which all occurred in November 2022. (Tr. 23). Gossett also testified that he arrested Mother on November 30, 2022, because she was admittedly high on marijuana at a visit with the children. (Tr. 24-25). And Gossett testified that Mother was arrested and spent time in jail six other times during the pendency of this case. (Tr. 28-30).

**{¶36}** As can be seen from the record, clear and convincing evidence exists to support the trial court's determination that it is in the children's best interests to grant permanent custody to the Agency. Mother loves the children and has had some successful visitation with them. But this does not overcome the significant amount of evidence that it is in the children's best interest for the court to grant their permanent custody to the Agency. The children have been with a foster family who loves them and cares for their needs for over a year. They have formed bonds with their extended foster

family. And while the children have been bonding with their foster family, Mother has repeatedly failed drug tests, failed to secure employment, failed to maintain stable housing, and has been arrested seven times. Moreover, the children's GAL opined that permanent custody to the Agency was in the children's best interest. And the children expressed to their counselor that while they love Mother, they wished to remain with their foster family. Given this evidence, the trial court did not abuse its discretion in granting permanent custody to the Agency.

{¶37} Accordingly, Mother's first assignment of error is without merit and is overruled.

{¶38} Mother's second assignment of error states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN NOT INTERVIEWING THE CHILDREN AS TO THEIR WISHES.

{¶39} Here, Mother contends the trial court should have interviewed each of the children. She claims there was no objection to the children being interviewed.

{¶40} At the beginning of the permanent custody hearing, Mother's counsel made a motion for the court to interview the children. (Tr. 8). Contrary to Mother's assertion on appeal, the Agency objected due to Mother waiting until the day of the hearing to raise her motion. (Tr. 8). The court stated that it would consider the motion and rule on it at the conclusion of the presentation of evidence. (Tr. 9).

{¶41} After hearing all of the evidence, the court denied Mother's motion for an in-camera interview of the children. (Tr. 345). The court explained its denial:

These children according to what I've heard over the past two days, last week and today, obviously have been through a lot. They have been through the removal from not only their mother but also their grandparents. They have been involved in counseling. They have been involved in Harmony House interviews. They have witnessed their mother under traumatic circumstances which led to her arrest and ultimately her current incarceration. I'm speaking about the November 30th, 2022 situation that's been testified to. There have been other visitation issues that the court has received testimony on. There have obviously been constant interaction with

Case Nos. 23 BE 0025, 23 BE 0026, 23 BE 0027

Children Services and Mr. Pritchard. I think they've been through enough and the court does not want to put them through an interview with the Judge especially when the GAL has testified and set forth in his report that he has spoken with the children on several occasions about their custodial care and living arrangements.

As counsel knows, pursuant to Ohio Revised Code Section 2151.414(D)(2), the court can consider the wishes of the children as expressed directly, or as expressed through the GAL with due regard for the maturity of the children.

So, pursuant to that statute, the law that's relevant here in the state of Ohio on this issue, I am going to consider the wishes of the children with due regard to their maturity level as expressed through the guardian ad litem.

(Tr. 345-346).

{¶42} In *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 3, the Ohio Supreme Court was asked to answer the certified question: "Whether a trial court abuses its discretion by denying a request for an in camera interview in a permanent custody determination when there is nothing in the record to indicate that having the children testify would have been detrimental to them or that they did not desire to testify." The Court answered the question in the negative. *Id.*

{¶43} In *C.F.*, father, whose parental rights were terminated by the trial court, had requested that the court conduct an in-camera interview of his children. The trial court denied his request and instead relied on the guardian ad litem's testimony. The Eighth District Court of Appeals concluded that the trial court had abused its discretion by not giving the children the opportunity to express their desires directly. This conclusion was in conflict with decisions from other courts of appeals.

{¶44} The Ohio Supreme Court agreed with the conflict cases finding:

We agree with the conflict cases. The statute unambiguously gives the trial court the choice of considering the child's wishes directly from the child or through the guardian ad litem. Therefore, our answer to the second

certified-conflict question is no.  When determining the wishes of the child, a court is required by R.C. 2151.414(D)(2) to consider the wishes of the child, "as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child."  The statute does not impose the additional requirement that the trial court also consider whether the children want to testify or whether testifying would be detrimental to them.

The trial court has discretion to accept the testimony of the guardian ad litem on the child's wishes rather than hearing a direct expression of those wishes made by the child.

*Id.* at ¶ 55-56.  The Court noted that in this case, both the children's guardian ad litem and counselor testified as to the children's wishes.  *Id.* at ¶ 56.

**{¶45}** Thus, we will not reverse the trial court's decision in this case to deny Mother's motion to have the court interview the children absent an abuse of discretion.

**{¶46}** Nothing in the record indicates that the trial court abused its discretion in denying Mother's motion for the court to interview the children.  After listening to the testimony regarding everything the children had been through, the court elected to rely on the GAL's testimony regarding the children's wishes rather than require the children to submit to interviews by the court.  As explained by the Ohio Supreme Court, R.C. 2151.414(D)(2) directs the trial court to consider the children's wishes "as expressed directly by the child *or* through the child's guardian ad litem." (Emphasis added).  It was within the trial court's discretion here to consider the children's wishes as expressed through the GAL.

**{¶47}** Accordingly, Mother's second assignment of error is without merit and is overruled.

**{¶48}** Mother's third assignment of error states:

THE TRIAL COURT ERRED BECAUSE IT FAILED TO APPOINT AN ATTORNEY TO REPRESENT THE CHILDREN AND THEREFORE THE TRIAL COURT'S JUDGMENT GRANTING PERMANENT CUSTODY TO THE AGENCY SHOULD BE REVERSED.

**{¶49}** Mother contends the children's wishes, especially B.M.'s wishes, differed from the GAL's opinion. Therefore, she contends, the trial court was required to appoint an attorney to represent the children.

**{¶50}** "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel *in certain circumstances*." (Emphasis added); *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, at the syllabus. "The 'certain circumstances' to which the court referred are when the wishes of the child and the recommendation of the GAL conflict." *In re A.S.*, 10th Dist. Franklin No. 05AP-351, 2005-Ohio-5492, ¶ 8.

**{¶51}** The wishes of the children and the recommendation of the GAL did not conflict in this case. Therefore, the trial court was not required to appoint an attorney to represent the children.

**{¶52}** The GAL met with each child individually to discuss their wishes. (Tr. 298). He stated that each of the children expressed to him that they wished to remain in their foster home and be adopted by their foster family. (Tr. 298-299). He opined that permanent custody to the Agency was in the children's best interest. (Tr. 299).

**{¶53}** There was testimony that the children still love and miss their mother. But that testimony is not inconsistent with their wishes to remain in their foster home. The children's therapist testified that E.M. Jr. misses Mother, but likes his foster home and wants to remain there. (Tr. 41-42). Likewise, she testified that E.M. expressed to her that he loves Mother but he does not want to live with her. (Tr. 44). Instead, E.M. told her that he wishes to live with his foster parents. (Tr. 44). The therapist testified that when she spoke with the children about the possibility of adoption, E.M. Jr. and E.M. were excited but B.M. was "a little upset." (Tr. 45). B.M. expressed that she loves and misses Mother. (Tr. 47). But B.M. also expressed that she enjoys being at her foster home and does not want to return to Mother's care. (Tr. 47-48). B.M. just wants to see Mother. (Tr. 47-48). There was no testimony that any of the children wished to be returned to Mother's care.

{¶54} Because the children's wishes were not inconsistent with the GAL's recommendation, the trial court did not err in failing to appoint separate counsel for the children.

{¶55} Accordingly, Mother's third assignment of error is without merit and is overruled.

{¶56} Mother's fourth assignment of error states:

BECAUSE OF THE FAILURE OF THE GAL TO FAITHFULLY DISCHARGE HIS DUTIES, THE TRIAL COURT ERRED IN ADMITTING AND CONSIDERING THE TESTIMONY OF THE GAL, FAILING TO DISCHARGE THE GAL, AND FAILING TO APPOINT A NEW GAL, AND THEREFORE THE TRIAL COURT'S JUDGMENT GRANTING PERMANENT CUSTODY TO THE AGENCY SHOULD BE REVERSED.

{¶57} Mother argues the trial court erred by admitting the GAL's testimony and by failing to replace the GAL. She claims that, according to the GAL's reports, in the 18 months leading up to the permanent custody hearing, the GAL only met once with the children. Moreover, she claims the reports indicate the GAL never observed the children with her. And she claims the GAL never interviewed her.

{¶58} Generally, we review a trial court's decision on whether to remove a guardian ad litem for abuse of discretion. *In re Maloney*, 7th Dist. Columbiana No. 95 CO 74, 1999 WL 342766 (May 18, 1999). But when a party fails to raise an objection in the trial court to the guardian ad litem, then we are to apply a plain error review. *In Matter of K.R.*, 12th Dist. Warren No. CA2017-02-015, 2017-Ohio-7122, ¶ 21. The Ohio Supreme Court defined plain error in the civil context as an error that "seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099, at the syllabus.

{¶59} Pursuant to R.C. 2151.281(B)(1), a court must appoint a guardian ad litem "to protect the interest of a child in any proceeding concerning an alleged abused or neglected child and in any proceeding held pursuant to section 2151.414 of the Revised Code." The guardian ad litem has wide latitude to protect the best interests of the child.

Case Nos. 23 BE 0025, 23 BE 0026, 23 BE 0027

*In re C.T.*, 119 Ohio St.3d 494, 2008-Ohio-4570, ¶ 14. A guardian ad litem's duties involve the performance of "whatever functions are necessary to protect the best interest of the child, including, but not limited to, investigation, mediation, monitoring court proceedings, and monitoring the services provided the child by" the agency responsible for the child. R.C. 2151.281(I).

{¶60} Pursuant to Sup.R. 48.03(D), the duties of a guardian ad litem include, but are not limited to, the following:

(1) Become informed about the facts of the case and contact all relevant persons;

(2) Observe the child with each parent, foster parent, guardian or physical custodian;

(3) Interview the child, if age and developmentally appropriate, where no parent, foster parent, guardian, or physical custodian is present;

(4) Visit the child at the residence or proposed residence of the child in accordance with any standards established by the court;

(5) Ascertain the wishes and concerns of the child;

(6) Interview the parties, foster parents, guardians, physical custodian, and other significant individuals who may have relevant knowledge regarding the issues of the case. The guardian ad litem may require each individual to be interviewed without the presence of others. Upon request of the individual, the attorney for the individual may be present;

(7) Interview relevant school personnel, medical and mental health providers, child protective services workers, and court personnel and obtain copies of relevant records;

(8) Review pleadings and other relevant court documents in the case;

(9) Obtain and review relevant criminal, civil, educational, mental health, medical, and administrative records pertaining to the child and, if appropriate, the family of the child or other parties in the case;

(10) Request that the court order psychological evaluations, mental health substance abuse assessments, or other evaluations or tests of the parties as the guardian ad litem deems necessary or helpful to the court;

(11) Review any necessary information and interview other persons as necessary to make an informed recommendation regarding the best interest of the child.

**{¶61}** Mother asserts the GAL failed to comply with Sup.R. 48.03(D)(2) through (6).

**{¶62}** The failure to strictly comply with each and every requirement of Sup.R. 48.03 in most circumstances does not constitute grounds for reversal. *Witherow v. Witherow*, 7th Dist. Columbiana No. 21 CO 0029, 2022-Ohio-3618, ¶ 29. But there can be cases where the record reveals a failure which so affects the proceeding that it requires reversal. *Id.*, citing *In re: A.S.*, 10th Dist. Franklin Nos. 21AP-249, 21AP-259, 2022-Ohio-1861.

**{¶63}** There is no plain error in this case. Both the initial report, filed October 15, 2021, and the updated report, filed March 23, 2023, indicate that the GAL spoke with the children and asked their wishes and concerns. The GAL testified that he met with the children six times during the pendency of this case. (Tr. 301). He spoke with each of them individually to determine their wishes and concerns. (Tr. 298-299). He also had contact with the Agency. (Tr. 297). The GAL had contact with Mother at family team meetings. (Tr. 297). But he did not meet with Mother individually because Mother did not respond to the GAL's invitation to meet. (Tr. 297). The GAL observed a visitation between Mother and the children. (Tr. 302). The GAL also met with the foster family and observed the children in their foster home. (Tr. 299, 300). The GAL also reviewed case plans, attended various reviews and hearings, and corresponded with others involved in this case. (March 23, 2023, Updated GAL Report).

{¶64} Based on the above, we can find no plain error with the trial court's retention of the GAL in this case.

{¶65} Accordingly, Mother's fourth assignment of error is without merit and is overruled.

{¶66} For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

D'Apolito, P.J., concurs.

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgments of the Court of Common Pleas, Juvenile Division, of Belmont County, Ohio, are affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**